ADVOCATES FOR THE HANDICAPPED *et al.,* Plaintiffs-Appellants, *v.*
SEARS, ROEBUCK AND CO., Defendant-Appellee.

First District (3rd Division)   No. 76-875

Opinion filed December 20, 1978.

Melvin M. Landau, Richard J. Friedman, and Edward Parsons, all of
Chicago, for appellants.

Burton Y. Weitzenfeld and Robert B. Hoffman, both of Arnstein, Gluck,
Weitzenfeld & Minow, of Chicago, for appellee.

Miss JUSTICE McGILLICUDDY delivered the opinion of the
court:

The plaintiffs, Dennis Klapacz, on his own behalf and on behalf of all

other individuals similarly situated, and Advocates for the Handicapped, brought suit against Sears, Roebuck and Co., for injuries allegedly caused by Sears' discriminatory hiring practices. The plaintiffs sought declaratory and injunctive relief as well as damages. Following the granting of Sears' motion to dismiss by the Circuit Court of Cook County, the plaintiffs have prosecuted this appeal.

The plaintiffs filed a three-count complaint. They alleged that Klapacz was 22 years of age at the time of filing the complaint and was expecting to graduate from DePaul University with a bachelor of science in business degree by December 1975. For approximately 10 years prior to the initiation of the suit, Klapacz suffered from nephritis. Due to this ailment, he was forced to receive dialysis treatments for a period of two years prior to September 10, 1974. On September 11, 1974, Klapacz received a kidney transplant at Billings Hospital in Chicago. With respect to this operation, the plaintiffs alleged as follows:

" * * * On December 27, 1974, his condition was, according to the medical authorities at Billings Hospital, stable. The prognosis for return to work was 'good,' except that Dennis Klapacz was restricted from heavy lifting."

In January 1975 Klapacz applied for employment with Sears at which time he successfully passed all preemployment tests and was advised that, pending clearance from the medical department, there were positions available for him. However, he failed to receive the required medical certification, allegedly on the grounds that he was an uninsurable risk under Sears' self-insurance program. Consequently, he was not offered a position with the company.

Advocates is a not-for-profit corporation, established for the purpose of promoting "the common needs of the handicapped through advocacy, public education and coordination of effort." The organization is composed of handicapped individuals, parents of handicapped individuals and professionals involved in the rehabilitation of handicapped people. Klapacz is a member of the Advocates organization.

The plaintiffs contend that the actions of Sears violate both article I, section 19 of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, §19) and the Equal Opportunities for the Handicapped Act (Ill. Rev. Stat. 1975, ch. 38, par. 65—21 *et seq.*). In count I, as amended, all plaintiffs seek an order "declaring that 'insurability' or 'costs of insurance' are considerations not related to whether a particular handicap prevents the performance of the employment involved, within the meaning of the Constitutional and statutory provisions" applicable in Illinois. Likewise, in amended count I, the plaintiffs seek an order enjoining Sears from "discriminating against physically handicapped applicants for employ-

ment where the particular handicap does not prevent performance of the employment involved." In count II the plaintiffs request an injunctive order restraining Sears from requiring applicants to submit to a physical examination designed to determine their insurability and from asking any questions concerning the applicants' medical history, where these medical histories are unrelated to the ability of the applicant to perform the work for which he applies. Finally, in count III, Klapacz, solely in his individual capacity, seeks damages pursuant to section 9 of the Equal Opportunities for the Handicapped Act (Ill. Rev. Stat. 1975, ch. 38, par. 65—29).

The trial court dismissed the case on two grounds: that Klapacz is not a handicapped person within the meaning of the Equal Opportunities for the Handicapped Act and thus was neither entitled to the protection of the Act, nor a member of the purported class, and that Advocates lacked standing. On appeal the plaintiffs assert that these conclusions are improper. Sears, on the other hand, supports the trial court's decision and raises the additional question of whether the Act is unconstitutionally vague in that it fails to define the phrase "physical and mental handicap"; this latter question was raised in Sears' motion to dismiss, but the trial court did not reach this issue.

This first issue we address is whether Klapacz is handicapped within the meaning of article I, section 19 of the 1970 Illinois Constitution and the Equal Opportunities for the Handicapped Act. The constitutional provision establishes the right of all individuals suffering from a physical or mental handicap to be free from certain forms of discrimination:

> "All persons with a physical or mental handicap shall be free from discrimination in the sale or rental of property and shall be free from discrimination unrelated to ability in the hiring and promotion practices of any employer." (Ill. Const. 1970 art. I, §19.)

The Equal Opportunities for the Handicapped Act seeks to implement the policy declared by the Constitution in the areas of housing and employment. (Ill. Rev. Stat. 1975, ch. 38, par. 65—21.) Neither the Constitution nor the Act provides an effective definition of the term "physical or mental handicap."

At the Constitutional Convention, during the discussion of the provision, a few comments were made as to the scope of the term "physical or mental handicap." In response to a question as to what he considered the definition of physical handicap to be, Delegate Daley, one of the sponsors of the provision, stated:

> "Well, I would say polio victim, loss of one arm, a leg, finger, one eye, things like this—physically handicapped." (5 Record of Pro-

ceedings, Sixth Illinois Constitutional Convention 3679 (hereinafter cited as Proceedings).)

Later, he made the following remarks:

"Well, you just can't deny a person because he walks in the door because he has one arm; this is what we're saying in physically handicapped. When you look at him, you can't say, 'You can't have the job,' without discussing it with him. If he cannot perform the job or does not have the ability, then you can deny the person. That's all." (5 Proceedings 3679.)

There exist, in the record of the proceedings of the convention, a few isolated references to certain other classes of disabilities by other delegates—such as speech defects, infantile paralysis and epilepsy. None of these comments were expressly made in reference to the question of what was meant by the term "physical or mental handicap" although the context in which they were made supports an inference that the delegates considered these classes of disabilities to be covered by the provision. However, there is no indication in the record that the delegates ever agreed upon a precise formula for determining the scope of the term "physical or mental handicap."

■■ In section 2 of the Equal Opportunities for the Handicapped Act (Ill. Rev. Stat. 1975, ch. 38, par. 65—22) the following definition of the term "physical or mental handicap" is provided:

"The term 'physical or mental handicap' means a handicap unrelated to one's ability to perform jobs or positions available to him for hire or promotion * * *."

Since this definition effectively begs the question of what constitutes a handicap for purposes of the Act, it is of little use to us. Generally, when the legislature has failed to provide a specific definition for a term or phrase used in a statute, this court must presume that the term or phrase was intended to be applied in its ordinary and popularly understood meaning. (*People v. Dednam* (1973), 55 Ill. 2d 565, 304 N.E.2d 627; *Jackson v. Civil Service Com.* (1976), 41 Ill. App. 3d 87, 353 N.E.2d 331.) Absent a complete explanation of the term "physical or mental handicap" in the statute, we feel obliged to look to the ordinary and popular definition of that term to make our determination of whether Klapacz is entitled to the protection of the Act. The same approach is also appropriate in interpreting the constitutional provision, for it is well established that the words in the Constitution are to be taken in their ordinary acceptance. *Locust Grove Cemetary Association v. Rose* (1959), 16 Ill. 2d 132, 156 N.E.2d 577; *Village of Elmwood Park v. Forest Preserve* (1974), 21 Ill. App. 3d 597, 316 N.E.2d 140.

Klapacz argues that under the ordinary and popularly understood

meaning of the term, any individual is handicapped if he is prevented from fully enjoying his life because of a physical or mental condition. Insofar as the Equal Opportunities for the Handicapped Act purports to prohibit all employment discrimination against handicapped individuals, Klapacz claims that anyone who is denied employment on the basis of physical condition unrelated to his ability to fulfill the job is entitled to protection under the Act. Klapacz acknowledges that Sears denied him employment because he was an uninsurable risk under their program of self-insurance but argues that since his ineligibility for this insurance program was based upon his physical condition, he is handicapped within the meaning of the Act. In support of his interpretation of the common meaning of the term "physical and mental handicap," Klapacz cites the definition of "handicap" provided in Webster's Third New International Dictionary 1027 (1976):

" * * * a disadvantage that makes achievement unusually difficult; *esp.*: a physical disability that limits the capacity to work."

This definition has been relied upon by several other courts in resolving issues similar to the one presented here. See *Chicago, Milwaukee, St. Paul & Pacific R.R. Co. v. Washington State Human Rights Com.* (1976), 87 Wash. 802, 557 P.2d 307; *Chicago, Milwaukee, St. Paul & Pacific R.R. Co. v. State of Wisconsin* (1974), 62 Wis. 2d 392, 215 N.W.2d 443.

We find, however, that we cannot accept the plaintiff's interpretation of the common meaning of the phrase "physical and mental handicap." First, we feel that his approach would extend the proscriptions of the Act well beyond the scope intended by the legislature. Since virtually every consideration upon which an employer is likely to evaluate a prospective or current employee may be classified as either a mental or physical condition, the Act would be transformed into a universal discrimination law. Even such considerations as sex, age and race could be denominated as physical conditions and thus would be swept within the purview of the Equal Opportunities for the Handicapped Act. As Klapacz himself admits, these characteristics are generally considered to fall within a different category than mental or physical handicaps and the legislature has clearly dealt with them as being distinct. See, for example, the Fair Employment Practices Act (Ill. Rev. Stat. 1975, ch. 48, par. 851 *et seq.*)

Moreover, we believe that the legislature had in mind a more objective criteria for determining what physical or mental conditions constitute handicaps within the meaning of the Act than that suggested by the plaintiff. In effect, he argues that for any physical condition to reach the level of a handicap to be protected by the Act, an employer need only act upon that condition and deny the individual employment. We believe, however, that in enacting this legislation, the General Assembly had in mind a class of physical and mental conditions which are generally

believed to impose severe barriers upon the ability of an individual to perform major life functions.

■ Our interpretation, we feel is harmonious with the dictionary definition submitted by the plaintiff. Under his interpretation of this definition, the phrase "limits the capacity to work" means that the individual has been denied a job by an employer. Similarly, Klapacz reasons that the denial of employment also fulfills the requirement of this definition that the physical condition "makes achievement unusually difficult," since achievement is particularly difficult if a person is unable to get a job. However, the phrases "limit the capacity to work" and "makes achievement unusually difficult" more properly refer to an individual's ability to perform job-related tasks and not to the fact that he has been denied employment. Thus, the question of whether a person is handicapped turns upon whether the character of the disability is one which is generally perceived as one which severely limits the individual in performing work-related functions.

We are aware that our interpretation of the dictionary definition places us in conflict with the reasoning of the Wisconsin Circuit Court in *Chrysler Outboard Corp. v. Department of Industry, Labor & Human Relations* (1976), 14 Fair Empl.Prac.Cas. (BNA) 344. The Wisconsin statute prohibiting employment discrimination against handicapped individuals (Fair Employment Code, Wis.Stat.Ann. §111.31, *et seq.* (1974)), like Illinois' Equal Opportunity for the Handicapped Act, does not contain an effective definition of what constitutes a handicap. In determining that an individual suffering from asthma was handicapped within the meaning of the Wisconsin Fair Employment Code the Wisconsin Supreme Court in *Chicago, Milwaukee, St. Paul & Pacific R.R. Co. v. Wisconsin* took guidance from the definition of "handicap" provided in Webster's Third New International Dictionary. The Wisconsin Circuit Court in *Chrysler Outboard v. Department* interpreted the *Chicago, Milwaukee, St. Paul & Pacific R.R. Co. v. Wisconsin* court as having adopted the dictionary definition and, using the definition, determined that an individual suffering from acute lymphocytic leukemia was entitled to the protection of the Wisconsin Fair Employment Act. The Wisconsin Circuit Court made the following statement:

> " * * * In [*Chicago, M.St.P.&P.R.R.Co. v. Wisconsin*] the court approved a Department conclusion that the complainant's history of asthma constituted a handicap. If an employee's illness or defect makes it more difficult for him to find work, then it certainly operates to make achievement unusually difficult. The petitioner's refusal to hire the complainant in the instant case because of his illness is a classic example of how such an illness operates as a handicap. Complainant's illness clearly constitutes a 'handicap'

within the meaning of the Wisconsin Fair Employment Act." (14 Fair Empl.Prac.Cas. (BNA) 344, 345.)

From this language, we think it is clear that the Wisconsin Circuit Court followed the approach which the plaintiff has offered and which we have rejected. Insofar as the *Chrysler Outboard v. Department* decision conflicts with our views, we decline to follow it.

Klapacz alleges that he has a history of nephritis and that immediately prior to applying for the position at Sears he underwent an operation for a kidney transplant. From these medical conditions, the only physical impairment which he claims is that he is restricted from lifting heavy weights. Since we are dealing with the question of whether the dismissal of his complaint was proper, we must accept his allegations as true. (*Lynch v. Devine* (1977), 45 Ill. App. 3d 743, 359 N.E.2d 1137; *Benza v. Shulman Air Freight* (1977), 46 Ill. App. 3d 521, 361 N.E.2d 91.) We do not believe that the disability alleged by Klapacz is of the nature which falls within the commonly understood meaning of the term "physical handicap." Therefore, we affirm the trial court in its conclusion that Klapacz was not handicapped within the meaning of either article I, section 19 of the Illinois Constitution of 1970, or the Equal Opportunities for the Handicapped Act. We believe that this holding is also determinative of the question of whether Advocates has standing in the suit. We also affirm the trial court's dismissal of Advocates' claims. Under the pleadings, all of the injuries for which Advocates now seeks relief flow from Sears' alleged refusal to hire Klapacz in violation of the Illinois Constitution and the Act. We have already determined, however, that Klapacz cannot maintain a suit since he is not handicapped and, therefore, he was not entitled to the protection of those provisions and thus suffered no injury. Since, under Advocates' allegations, the existence of its injuries is dependent upon Klapacz's injuries, the dismissal of his claims requires the dismissal of Advocates' claims.

The views we have already expressed effectively dispose of this appeal; therefore, we have no need to consider the question of whether the Equal Opportunities for the Handicapped Act is unconstitutionally vague. *People v. Dixon* (1963), 28 Ill. 2d 122, 190 N.E.2d 793; *In re Ross* (1975), 29 Ill. App. 3d 157, 329 N.E.2d 333.

For the reasons stated, we affirm the decision of the Circuit Court of Cook County.

Affirmed.

McNAMARA and JIGANTI, JJ., concur.