(No. 54655.—

ELAINE LYONS, Appellee, v. HERITAGE HOUSE RESTAURANTS, INC., *et al.,* Appellants.

*Opinion filed February 19, 1982.*

Carol J. Hansen Fines of Griffin, Winning, Lindner, Newkirk, Cohen & Bodewes, of Springfield, for appellants.

James M. Drake, of Springfield, for appellee.

JUSTICE SIMON delivered the opinion of the court:

Plaintiff, Elaine Lyons, alleges she was dismissed by defendant Heritage House from her position as manager of kitchen operations because her superiors there learned that she had developed an early form of cancer of the uterus, a condition which she asserts would have had no effect on her ability to carry out her duties. Claiming the loss of her salary, her employee life and health insurance benefits and use of the company car, she brought suit in the Sangamon County circuit court. That court dismissed her

complaint for failure to state a cause of action; the appellate court, however, reversed (92 Ill. App. 3d 668). We granted leave to appeal and now affirm the circuit court's dismissal.

The sole issue in this case is whether uterine cancer can be considered a "handicap" within the meaning of article I, section 19, of the 1970 Illinois Constitution or the Equal Opportunities for the Handicapped Act (Ill. Rev. Stat. 1977, ch. 38, par. 65—21 *et seq.*), both of which prohibit employment discrimination against the handicapped. The 1970 Illinois Constitution, article I, section 19, states, "All persons with a physical or mental handicap *** shall be free from discrimination unrelated to ability in the hiring and promotion practices of any employer." The Equal Opportunities for the Handicapped Act similarly provides:

> "It is an unlawful employment practice for an employer:
>
> (1) to refuse to hire, to discharge, or otherwise to discriminate against any individual *** because of such individual's physical or mental handicap, unless it can be shown that the particular handicap prevents the performance of the employment involved." (Ill. Rev. Stat. 1977, ch. 38, par. 65—23.)

The difficulty that arises here stems from the fact that the Constitution leaves the word "handicap" undefined, and the Act defined "handicap" somewhat circularly as "a handicap unrelated to one's ability to perform jobs or positions available to him for hire or promotion." (Ill. Rev. Stat. 1977, ch. 38, par. 65—22.) It should be noted that after the conduct in question here occurred the Equal Opportunities for the Handicapped Act was replaced by the Illinois Human Rights Act (Ill. Rev. Stat., 1980 Supp., ch. 68, par. 1—101 *et seq.*), which uses a substantially different definition. It is clear that any conduct occurring hereafter will be governed by that act.

Background material on the two laws is scant. Tran-

scripts of the constitutional convention indicate that delegates were unsure of the provision's scope, and because it was submitted from the floor of the convention, there is no official committee report to examine. When asked for his definition of physically handicapped, one of the provision's sponsors explained, "Well I would say polio victim, loss of one arm, a leg, finger, one eye, things like this—physically handicapped," thus adopting a narrow definition of the term. Other delegates, however, suggested that a physical handicap might also include a lisp, shortness, hemophilia, or nearsightedness. None of these personal views on the meaning of the term, not even that of the sponsor, necessarily, however, reflects the intent of the convention as a body, and therefore none can be given controlling weight. (See *Eddy v. Morgan* (1905), 216 Ill. 437, 449.) Background material explaining the legislature's perception of the word "handicap" in the Equal Opportunities for the Handicapped Act is even less helpful. In fact, it is nonexistent.

Handicapped themselves by this lack of information, appellate courts have devised and applied their own definitions based on analogies to other Illinois statutes and administrative rules, Federal law and the law of other States. Unfortunately, and owing to the courts' lack of access to the lawmakers' actual intent, these efforts have not always been in complete harmony.

In *Advocates for the Handicapped v. Sears, Roebuck & Co.* (1978), 67 Ill. App. 3d 512, Sears refused to hire a graduating business student who suffered from chronic kidney ailments and who had recently had a kidney transplant. Sears considered him an uninsurable risk under its self-insurance program, although conceding that he was capable of any physical activity he wished to engage in except lifting heavy weights, a skill that the position for which he was rejected did not require.

The court began its analysis by defining handicap as

the "class of physical and mental conditions which are generally believed to impose severe barriers upon the ability of an individual to perform major life functions" (67 Ill. App. 3d 512, 516-17), a definition that it probably drew from the guidelines promulgated by the Fair Employment Practices Commission under the Fair Employment Practices Act (Ill. Rev. Stat. 1977, ch. 48, par. 851 *et seq.*), which has also been replaced by the Human Rights Act, and from the Federal Rehabilitation Act of 1973 (29 U.S.C. sec. 706(6) (1976)). The court noted that the inability to perform major life functions must be inherent in the physical or mental condition; otherwise the word "handicap" could be construed to include any physical or mental condition, normal or abnormal, that might unfairly cause an employer not to hire. Such a result, it felt, was not in keeping with the ordinary meaning of the term. To emphasize this point, the court, without rejecting its first definition, alternatively defined "handicap" as "a disability *** which is generally perceived as one which severely limits the individual in performing work-related functions." (67 Ill. App. 3d 512, 517.) Applying both definitions, the court concluded that the plaintiff's condition was not a handicap.

*Kubik v. CNA Financial Corp.* (1981), 96 Ill. App. 3d 715, which involved a man recovering from the removal of a malignant tumor in his colon, loosely followed the reasoning in *Advocates.* Without referring to the second definition given in that case, the court found that the plaintiff's condition did not come within the class of physical or mental conditions which are generally believed to impose severe barriers upon the ability of the individual to perform major life functions and therefore did not constitute a handicap.

The appellate court's analysis in the present case contrasts with these two. First, it rejected the second definition of "handicap" formulated by the court in *Advocates.*

It stated that to define "handicap" as a "disability which is generally perceived as one which severely limits the individual in performing work-related functions" would nullify the force of the law entirely because, under both the statute and the Constitution, handicaps that interfere with the applicant's ability to do the job are expressly exempted. Instead, the appellate court apparently opted to apply the first definition proposed in *Advocates.* Contrary to *Kubik v. CNA Financial Corp.* and perhaps to *Advocates* itself, however, the appellate court in this case held that cancer was indeed such a physical condition and therefore a handicap within the meaning of the laws in issue.

The one thing the three cases appear to agree upon is that the first definition of handicap set forth in *Advocates*, "a class of physical and mental conditions which are generally believed to impose severe barriers upon the ability of an individual to perform major life functions" (67 Ill. App. 3d 512, 516-17), is a fair one. Except for the fact that the definition calls for "severe barriers" rather than "substantial" ones, it is identical to the definition given in the guidelines promulgated under the Fair Employment Practices Act, which was similar in purpose, although different in remedy, to the laws in question, and similar to that given in the Federal Rehabilitation Act of 1973, which prevents recipients of Federal funds from discriminating on the basis of a handicap. We think that the analogy drawn by the courts to these statutes is sensible; even though both came into effect after the laws in question, both were in existence at the time the actions complained of occurred.

Moreover, we believe the definition itself comports with the ordinary understanding of the term. It refers to physical conditions that impede normal, everyday activities, rather than to any medical condition or illness. See Cal. Gov't Code sec. 12926 (Deering 1981 Supp.) (dis-

tinguishes handicap from medical condition, both of which are separately protected); *American National Insurance Co. v. State of California Fair Employment Practice Com.* (1981), 114 Cal. App. 3d 1008, 170 Cal. Rptr. 887 (holding that high blood pressure by itself is not a handicap); *GASP v. Mecklenburg County* (1979), 42 N.C. App. 225, 256 S.E.2d 477 (persons allergic to cigarette smoke are not handicapped); but see *Chrysler Outboard Corp. v. Department of Industry, Labor and Human Relations* (Wis. Cir. Ct. 1976), 14 Fair Emp. Prac. Cas. 344 (BNA) (affirming an administrative finding that leukemia is a handicap).

Not all physical conditions that may give rise to discriminatory treatment are physical handicaps within the meaning of the law. Race, sex, age, although physical conditions, are not handicaps. That is one reason why they are provided for elsewhere in employment discrimination law. Not all abnormal physical conditions are handicaps. Some impose no limitations at all on everyday activity such as the lack of tonsils or an appendix, acne or dandruff; others are so temporary in effect that they cannot be considered a substantial limitation on activity, such as colds, flu or mumps. These cannot be called handicaps.

The problem with this definition is that it has proved itself difficult to apply to specific situations. The *Kubik* court found that it did not apply to cancer; the appellate court in this case held that it did. The appellate court based its decision to include cancer in the definition on its belief that the Federal Rehabiliatation Act specifically included cancer as a handicap and that the Fair Employment Practices Commission Guidelines also specifically provide as such. Nowhere does the court consider independently whether or not plaintiff's illness falls within the literal meaning of the definition.

Contrary to the appellate court's belief, the Federal Rehabilitation Act does not specifically include cancer

in its list of handicaps. Rather, in defining "severe handicap," it includes disabilities which require extra services and which *result from* blindness, cancer, cerebral palsy or a variety of other conditions. (29 U.S.C. sec. 706(13) (1979 Supp.).) It does not call cancer by itself a handicap. The Fair Employment Practices Commission Guidelines similarly do not specifically classify cancer as a handicap. Rather they offhandedly mention recovered cancer victims as persons who sometimes have experienced trouble readjusting to employment because of their record of a handicap. Nowhere does the Commission say that cancer victims necessarily come within the definition of the handicapped. Even if it had, this court would not feel bound by such an interpretation in this case, in which we are applying the Equal Opportunities for the Handicapped Act and the Illinois Constitution, both of which predate the laws discussed above. We do not believe it is in accord with the ordinary understanding of the term.

The proper approach to applying the definition of handicap, in our judgment, lies not in the analysis the appellate court developed in this case but in independently applying the following definition: the class of physical and mental conditions which are generally believed to impose severe barriers upon the ability of an individual to perform major life functions (the first definition set forth in *Advocates*). We note that the Fair Employment Practices Commission Guidelines define "life activities" to include communication, self-care, socialization, education, employment, transportation, and the like. Similarly, the United States Department of Health and Human Services defined major life activities to include activities such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. (45 C.F.R. 84.3(j) (2) (ii) (1980).) The plaintiff has not alleged that her cancer has substantially hindered her in any of these activities or any other activities or that

her employer perceived her condition as causing such a hindrance. In our judgment, she is not handicapped within the meaning of the Illinois Constitution or the Equal Opportunities for the Handicapped Act.

*Appellate court reversed;*
*circuit court affirmed.*