CHEVRON CORPORATION, Petitioner,

v.

Sheila Ann Carter REDMON, Respondent.

No. C–4786.

Supreme Court of Texas.

Dec. 16, 1987.

Rehearing Denied March 23, 1988.

Janet L. Lachman, Houston, for petitioner.

Jas. W. Mehaffy, Beaumont, for respondent.

## OPINION

RAY, Justice.

This case involves the question of who has standing to bring an action for employment discrimination based on "handicap" under the Commission on Human Rights Act, TEX.REV.CIV.STAT.ANN. art. 5221k. The court of appeals held that article 5221k does not require a determination of whether a person is a "handicapped person," but only a determination of whether an employer refused to hire a person "because of handicap." [*Carter v. Gulf Oil Corp.*] 699 S.W.2d 907. We reverse the court of appeals' judgment and render judgment affirming the trial court's summary judgment in favor of Chevron.

Sheila Ann Carter Redmon applied for the position of maintenance helper or laborer with Gulf Oil Corporation, now Chevron Corporation. Gulf's Medical Department administered a mandatory medical examination and determined that one of Redmon's eyes could not be corrected to better than 20/60 vision. Redmon also has limited stereopsis, or limited ability to judge relative distance by use of binocular vision. Gulf requires that all applicants have at least 20/40 vision with correction in one eye, and 20/30 on the other to be hired for that position. It is undisputed that Redmon was not hired because of her vision.

Redmon sued Gulf for employment discrimination under TEX.HUMAN RES. CODE ANN. § 121.003(f), which has been repealed and recodified in the Commission on Human Rights Act, TEX.REV.CIV. STAT.ANN. art. 5221k. The trial court granted summary judgment for Gulf on the ground that Redmon is not a "handicapped person" under article 5221k. The court of appeals reversed and remanded for trial for a determination of whether Redmon was denied employment "because of handicap." We hold that the court of appeals' interpretation of the act is too narrow, and ignores the Act's provisions defining "handicap" and "handicapped person." We also hold that Redmon is not "handicapped" under article 5221k as a matter of law.

Section 1.04 of article 5221k contains several "Specific Rules of Construction." In section 1.04(b) " 'because of handicap' or 'on the basis of handicap' refers to discrimination because of or on the basis of a physical or mental condition that does not impair an individual's ability to reasonably perform a job."

Section 2 lists several "General Definitions." "Handicapped person" is defined in section 2.01(7)(A) as

a person who has a mental or physical handicap, including mental retardation, hardness of hearing, deafness, speech

impairment, visual handicap, being crippled or any other health impairment that requires special ambulatory devices or services, as defined in Section 121.002(4), Human Resources Code, but does not include a person because he is addicted to any drug or illegal or federally controlled substances or because he is addicted to the use of alcohol."

The definition of "handicap" in Section 2.01(7)(B) is

a condition either mental or physical that includes mental retardation, hardness of hearing, deafness, speech impairment, visual handicap, being crippled, or any other health impairment that requires special ambulatory devices or services, as defined in Section 121.002(4), Human Resources Code, ...

Alcoholism and drug addiction are again excluded.

Section 5 of article 5221k describes acts which constitute employment discrimination. Under section 5.01(1), it is an unlawful employment practice for an employer "to fail or refuse to hire or to discharge an individual or otherwise to discriminate against an individual with respect to compensation "or the terms, conditions, or privileges of employment because of ... handicap...."

■ The court of appeals reasoned that article 5221k does not require a determination of whether a plaintiff is a "handicapped person" as section 121.003(f) of the Human Resources Act required, but only a determination of whether the plaintiff was denied employment "because of handicap" under section 5.07(a)(1). To so construe the statute ignores the definitions of "handicap" and "handicapped person" in article 5221k. These same definitions existed in the predecessor statutes and were obviously included in article 5221k for a reason; otherwise the inclusions of these definitions would be meaningless. We will give effect to all the words of a statute and not treat any statutory language as surplusage if possible. *Perkins v. State*, 367 S.W.2d 140 (Tex.1963). There is no reason to ignore the definitions of "handicap" and "handicapped persons." Just as plaintiffs

in Federal Title VII and age discrimination actions must show that they are members of a protected class, *see, McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), Redmon must first show that she is within the protected class before she can recover under article 5221k. She must prove that she is a "handicapped person." Also, the explanation of the term "because of handicap" is in the section in article 5221k called "Specific Rules of Construction." This "rule of construction" simply adds the requirement that before any "handicap" can be the basis of a discrimination action, it must not impair that person's ability to reasonably perform the job. The plaintiff, however, must still be "handicapped."

Article 5221k's definitions of "handicap" and "handicapped person" do not detail what is covered by that term, however. We therefore have examined the entire act, the predecessor acts, and the legislative history of these acts to determine what the Act was intended to cover. *Sayre v. Mullins*, 681 S.W.2d 25 (Tex.1984); *San Antonio Gen. Drivers, Helpers Local No. 657 v. Thornton*, 156 Tex. 641, 299 S.W.2d 911 (1957).

The "Commission on Human Rights Act," article 5221k, was effective September 1, 1983. The purposes of the Act are listed in Section 1.02. One purpose of the Act is to provide for the execution of policies embodied in Title VII of the Federal Civil Rights Act, 42 U.S.C. § 2000e–2000e–17, which concerns discrimination due to race, sex, or national origin. Another purpose is "to create an authority that meets the criteria" under 42 U.S.C. § 2000e–5(c), which provides the procedure for filing employment discrimination complaints under section 2000e when there is a state law concerning employment discrimination, and 29 U.S.C. § 633, which provides the procedure for filing age discrimination complaints when there is a governing state law. Neither of these statutes cover discrimination due to handicaps. Other listed purposes of article 5221k are as follows:

to secure for persons within the state freedom from discrimination in certain

transactions concerning employment, and thereby to protect their interest in personal dignity; and to make available to the state their full productive capacities, to secure the state against domestic strife and unrest, to preserve the public safety, health, and general welfare, and to promote the interests, rights, and privileges of individuals within the state.

Prior to 1983, employment discrimination based on handicap was covered by TEX. HUMAN RES.CODE § 121.003(f), enacted in 1979. That statute provided as follows:

(f) An employer who conducts business in this state may not discriminate in his or her employment practices against a handicapped person on the basis of the handicap if the person's ability to perform the task required by a job is not impaired by the handicap and the person is otherwise qualified for the job.

"Handicapped person" was defined in section 121.002(4) identically to the definition in article 5221k except that it did not exclude drug addicts and alcoholics.

Sections 121.001–121.010 of the Human Resources Code were entitled "Rights and Responsibilities of the Handicapped." The policy of that Act was outlined in section 121.001 "to encourage and enable physically handicapped persons to participate fully in the social and economic life of the state, to achieve maximum personal independence, to become gainfully employed, and to otherwise fully enjoy and use all public facilities within the state." The bulk of the Act concerns access to common carriers, use and enjoyment of public facilities, and housing accommodations. Under section 121.003(a), the "physically handicapped" have the same rights as the "able-bodied" to use public facilities. Sections 121.005 and 121.006 concern a handicapped person's responsibilities and penalties, particularly with reference to the use of guide dogs. Section 121.007 covers the use of white canes by "totally or partially blind or otherwise incapacitated persons," and requires drivers to take precaution to avoid injury to those with guide dogs or white canes who are attempting to cross the street.

An examination of the entire Act in the Human Resources Code reveals that the legislature was concerned with those physical and mental defects which are serious enough to affect a person's use of public facilities and common carriers, ability to obtain housing, and the ability to cross the street. The intent of the Act was to protect those impaired to the point that they might not be able to participate in the social or economic life of the state, achieve independence, or become gainfully employed, without this protection. The legislature obviously was not concerned with minor physical or mental defects.

The predecessor statute to sections 121.-001 *et seq.* was TEX.REV.CIV.STAT.ANN. art. 4419e, enacted in 1969. The employment discrimination provision was added to that statute in 1975. In 1977, a provision was added that it was "the policy of the State of Texas that the blind, the visually handicapped, and the otherwise physically disabled shall be employed by the state ... on the same terms and conditions as the able-bodied, unless it is shown that the particular disability prevents the performance of the work involved." Article 4419e, section 3(g). The wording of this provision, contrasting the "handicapped" with the "able-bodied," reveals that when employment discrimination based on handicap was added to the Act, the legislature was concerned with serious impairments.

When enacting article 5221k, the legislature chose to define "handicapped person" identically to the definition in article 4419e and the Human Resources Code except for the exclusion of alcoholics and drug addicts. Ron Wilson, who sponsored the bill which became article 5221k, told the House that there was a handicap law already on the books of Texas, and urged them not to limit or damage that law. There was no discussion of who was included in the term "handicapped" at any recorded stage of the legislative process. Evidently, article 5221k was not intended to change the law concerning handicapped persons.

A review of the statutes and the legislative history of this Act reveals that the legislature was concerned with protecting

persons with impairments of an incapacitating nature. Furthermore, the legislature obviously chose not to employ the definition of "handicap" in the federal Rehabilitation Act, 29 U.S.C. § 701–796i. In fact, the legislature did not even refer to that Act in section 1.02 describing the purposes of the Act. We therefore choose not to employ the definition of "individual with handicaps" in 29 U.S.C. § 706(8).

In *Advocates for the Handicapped v. Sears, Roebuck & Co.*, 67 Ill.App.3d 512, 24 Ill.Dec. 272, 385 N.E.2d 39 (1978), *cert. denied* 444 U.S. 981, 100 S.Ct. 484, 62 L.Ed. 2d 408 (1979), the Illinois court was faced with a similar statute which did not specifically define "handicap." That court held that the legislative history of its statute revealed that the State General Assembly had in mind severe barriers on the ability of an individual to perform major life functions. It decided to assume the ordinary and popularly understood meaning of the term, and looked to *Webster's Third New International Dictionary* (1976) for guidance. "Handicap" was then defined, and still is defined, as "a disadvantage that makes achievement unusually difficult; esp., a physical disability that limits the capacity to work." *Webster's Third New International Dictionary* (1981). Other courts have used the dictionary definition of "handicapped." *Philadelphia Elec. Co. v. Commonwealth*, 68 Pa.Cmwlth. 212, 448 A.2d 701 (1982); *Chicago, Mil., St.P. & P.R.R. v. ILHR*, 62 Wis.2d 392, 215 N.W.2d 443 (1974). The Illinois court held that a man who suffered nephritis and had received a kidney transplant was not "handicapped." The court held that the test for whether a person is "handicapped" is whether the disability is one which is generally perceived as one which severely limits him in performing work-related functions.

We believe the same reasoning applies in this case. While under article 5221k, a person may not sue if his handicap impairs his ability to do *that* particular job, in order for a disability to be considered a handicap in the first place it must be one which is generally perceived as severely limiting him in performing work-related functions in general.

Redmon testified by deposition that she felt she had no physical problems before she applied at Gulf, and she checked the Gulf form asking if she had visual problems, "No." She knew the vision in her left eye could only be corrected to 20/60. She has never informed a prospective employer other than Gulf of her vision. Redmon's minor visual problems do not constitute those severe barriers to employment or other life functions which necessitate protection by the State. To hold otherwise would transform every characteristic an employer uses to make employment decisions into a "handicap." Employers should have the right and the freedom to make their employment decisions without interference unless they discriminate against some protected group which might otherwise be unfairly denied employment.

The question of whether a person is "handicapped" is generally a question of fact for the fact finder. We hold that based on this summary judgment record, however, there is no evidence that Redmon is handicapped and thus, no fact issue has been raised. As a matter of law Redmon's disabilities do not constitute those severe impairments which article 5221k was intended to protect.

We therefore reverse the judgment of the court of appeals and render judgment affirming the trial court's judgment in favor of Chevron.

MAUZY, J., files a dissenting opinion in which, KILGARLIN, J., joins.

MAUZY, Justice, dissenting.

I respectfully dissent. I disagree with the court's treatment of the definitions of "handicap" and "handicapped person" and in the conclusion that Redmon's visual impairment was not a handicap as a matter of law. Although the court of appeals erred in holding that a claimant need not prove that he suffers from a handicap, I would affirm that court's decision and remand the cause for trial.

*Definitions*

Under § 2.01(7)(A) of article 5221k, a "handicapped person" is defined as

A person who has a mental or physical handicap, including mental retardation, hardness of hearing, deafness, speech impairment, visual handicap, being crippled or any other health impairment that requires special ambulatory devices or services, as defined in Section 121.002(4), Human Resources Code, but does not include a person because he is addicted to any drug or illegal or federally controlled substances or because he is addicted to the use of alcohol.

Similarly, "handicap" is defined in § 2.01(7)(B) as

A condition either mental or physical that includes mental retardation, hardness of hearing, deafness, speech impairment, visual handicap, being crippled, or any other health impairment that requires special ambulatory devices or services as defined in Section 121.002(4), Human Resources Code, but does not include a condition of addiction to any drug or illegal or federally controlled substances or a condition of addiction to the use of alcohol.

Tex.Rev.Civ.Stat.Ann. art. 5221k § 2.01(7)(A), (B) (Vernon 1987).

The definitions of "handicap" and "handicapped person," both the original version in the Human Resources Code and as amended at article 5221k, ambiguously include "visual handicap" in the definition. To determine what the legislature meant by a "visual handicap" this court must examine the entire Commission on Human Rights Act, and its predecessor statutes. The Act cites as its purposes, the execution of policies embodied in the federal Civil Rights Act of 1964 and to establish a commission to locally enforce laws against discrimination pursuant to federal enforcement provisions. 42 U.S.C. § 2000e–5(c). The other purpose listed in the statute illustrates the legislature's goal of protecting individuals from discrimination in employment.

A statute providing redress for an employer's discriminatory acts is remedial in nature because it benefits the public good.

*Board of Insurance Commissioners v. Great Southern Life Ins. Co.,* 150 Tex. 258, 239 S.W.2d 803, 809 (1951). To strictly interpret the terms of a remedial provision flies in the face of the underlying purpose of that legislation. Accordingly, such remedial provisions are generally afforded the most comprehensive and liberal construction possible. *City of Mason v. West Texas Utilities Co.,* 150 Tex. 18, 237 S.W. 2d 273, 280 (1951). This court specifically stated in *West Texas Utilities* that such a statute "certainly *should not* be given a narrow, technical construction which would defeat the very purpose for which the statute was enacted." 237 S.W.2d at 280 (emphasis added).

The fact that a list of conditions is specifically included in the statutory definition implies an incomplete rather than a complete listing. Under general rules of statutory construction, it is well settled that the words "including" and "that includes" act as words of enlargement, rather than limitation or restriction. *Republic Insurance Co. v. Silverton Elevators, Inc.,* 493 S.W. 2d 748 (Tex.1973). *Pierce v. Peters,* 599 S.W.2d 849, 851 (Tex.Civ.App.—San Antonio 1980, no writ). Additionally, the recodified version contained an amendment that specifically excluded any condition of drug or alcohol addiction. Tex.Rev.Civ.Stat. Ann. art. 5221k (Vernon 1987). This indicates the legislature's plain intent that the statute covers all other physical or mental disabilities. *State v. Richards,* 157 Tex. 166, 301 S.W.2d 597, 600 (1957).

The majority concludes that the language used in the original statute reveals the legislature's concern with only serious impairments. The majority relies on the "contrasting" terms: "handicapped" and "able-bodied." I fail to see how these two words, contrasting or otherwise, in any way illustrate the intent deduced by the majority. If the legislature had intended such an interpretation, it could have easily added the words "serious" or "severe" to the definition. To impose such a limitation by judicial fiat only works to further complicate cases brought under the statute. There is no bright line distinction that can

be drawn to indicate what is a "serious impairment." Not only does this narrow definition conflict with well-settled rules of statutory construction, the majority's opinion provides no explanation of what degree of impairment is required before an individual's mental or physical condition is severe enough to fit within the statutory definition. There is no way to determine at what point an individual's vision becomes *severely* impaired. Would the individual have to be completely blind, legally blind or merely blind enough that he is unable to read the majority's opinion? There is no benchmark to measure severity.

I would adopt a workable definition consistent with the interpretation employed by the Commission on Human Rights. As indicated in the Attorney General's opinion specifically approving the Commission's definition, the terms "handicap" and "handicapped person" should be construed broadly. I would also follow the lead of a majority of other jurisdictions in adopting a definition that includes all persons suffering from physical disability. As the New Jersey Supreme Court indicated in *Andersen v. Exxon Co.*, 89 N.J. 483, 446 A.2d 486 (1982), the remedial nature of its statute, like the Texas statute, calls for coverage of the slightly handicapped as well as those who are severely disabled. 446 A.2d at 492.

*Jury Issues*

I would also hold that the question of whether an individual is or is not a handicapped person constitutes a fact question for the jury's determination. Questions of fact exist regarding whether or not Redmon's impaired vision and limited ability to judge distances constitutes a handicap and whether such a condition would impair her ability to reasonably perform the job of maintenance helper. Therefore, I would affirm the decision of the court of appeals and remand this case to the trial court.

KILGARLIN, J., joins in this dissent.