

## ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

May 12, 2003

The Honorable Kent Grusendorf
Chair, Committee on Public Education
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0069

Re: Whether a municipality that has been granted a charter for an open-enrollment charter school may issue certificates of obligation to construct facilities for the school (RQ-0029-GA)

Dear Representative Grusendorf:

You ask whether a municipality that has been granted a charter for an open-enrollment charter school may issue certificates of obligation to construct facilities for the school.[1]

In 1995, the legislature amended the Education Code to provide for open-enrollment charter schools, adopting subchapter D of chapter 12 of the Education Code. *See* Act of May 27, 1995, 74th Leg., R.S., ch. 260, § 1, 1995 Tex. Gen. Laws 2207, 2244-2247. As enacted in 1995, chapter 12 also provided for home-rule school district and campus charter schools in subchapters B and C. *See id.* at 2236 (enacting Education Code, section 12.002 establishing classes of charters), 2236-2244 (enacting Education Code, chapters B-C). In 2001, the legislature added subchapter E providing for public college or university open-enrollment charter schools. *See* Act of May 28, 2001, 77th Leg., R.S., ch. 1504, § 19, 2001 Tex. Gen. Laws 5344, 5355 (enacting Education Code, chapter 12, subchapter E). A 1995 bill analysis describes charter schools as "independent public schools formed by individuals or organizations that operate according to a charter." HOUSE RESEARCH ORGANIZATION, BILL CONFERENCE REPORT SUMMARY, Tex. S.B. 1, 74th Leg., R.S. (1995).

Under subchapter D, an open-enrollment charter school is "part of the public school system of this state." TEX. EDUC. CODE ANN. § 12.105 (Vernon Supp. 2003). An open-enrollment charter school may not charge tuition. *See id.* § 12.108. Rather, a charter holder "is entitled to receive for the . . . school funding . . . as if the school were a school district." *Id.* § 12.106.[2] These funds "are

---

[1]*See* Letter from Honorable Kent Grusendorf, Chair, Committee on Public Education, Texas House of Representatives, to Honorable Greg Abbott, Texas Attorney General, at 1 (Mar. 12, 2003) (on file with Opinion Committee) [hereinafter Request Letter].

[2]*See* TEX. EDUC. CODE ANN. § 12.106(a) (Vernon Supp. 2003) ("A charter holder is entitled to receive for the open-enrollment charter school funding under Chapter 42 as if the school were a school district without a tier one local

(continued...)

considered to be public funds" and "are held in trust by the charter holder for the benefit of the students of the open-enrollment charter school." *Id.* § 12.107.

Under subchapter D, the State Board of Education (the "Board") may grant a charter on the application of "an eligible entity" that meets various financial, governing, and operational standards. *See id.* § 12.101(a)-(b). Significantly, as it has since 1995,[3] section 12.101(a) of the Education Code specifically defines the term "eligible entity" to include "a governmental entity." *Id.* § 12.101(a)(4). Although subchapter D does not define the term "governmental entity," the legislature has broadly defined the term in other statutes to expressly include municipalities. *See, e.g.*, TEX. GOV'T CODE ANN. §§ 2051.041(1)(B) (Vernon 2000) (notice publication by governmental entities), 2251.001(3), (6) (Vernon Supp. 2003) (payment of vendors by governmental entities), 2254.002(1) (Vernon Supp. 2003) (Professional Services Procurement Act); TEX. HEALTH & SAFETY CODE ANN. § 773.003(17) (Vernon Supp. 2003) (Emergency Medical Services Act); *see also* TEX. EDUC. CODE ANN. § 26.007 (Vernon Supp. 2003) (defining the term "governmental entity" by reference to section 2051.041 of the Government Code); TEX. GOV'T CODE ANN. § 311.011(b) (Vernon 1998) ("Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."). We see no reason not to apply an inclusive definition here. Thus, the legislature has authorized the Board to grant charters for open-enrollment charter schools to municipalities.

We understand that in January 2002, the Texas Education Agency ("TEA") granted a charter for an open-enrollment charter school to the City of Westlake, a Type A general-law municipality.[4] Because the city would like to issue certificates of obligation to finance the construction of facilities for the school, you ask, "May a municipality that has been granted a charter from the TEA to operate an open-enrollment charter school issue its Certificates of Obligation to construct facilities in which to house the charter school?" Request Letter, *supra* note 1, at 1.

Subchapter C of chapter 271 of the Local Government Code, the Certificate of Obligation Act (the "Act"), authorizes the governing body of an issuer, which it defines as either a municipality

---

[2](...continued)
share for purposes of Section 42.253 and without any local revenue . . . for purposes of Section 42.302. In determining funding for an open-enrollment charter school, adjustments under Sections 42.102, 42.103, 42.104, and 42.105 and the district enrichment tax rate . . . under Section 42.302 are based on the average adjustment and average district enrichment tax rate for the state."); *see also id.* §§ 42.253, 42.302.

[3]*See* Act of May 27, 1995, 74th Leg., R.S., ch. 260, § 1, 1995 Tex. Gen. Laws 2207, 2244 (enacting Education Code, section 12.101(a)).

[4]*See* Letter to Don Willett, Deputy Attorney General and General Counsel, from Jody Richardson, Akin Gump Strauss & Feld, L.L.P. (Mar. 12, 2003), attaching Letter to Representative Victoria Truitt from Scott Bradley, Mayor, Westlake, Texas [hereinafter City of Westlake Letter], (on file with Opinion Committee); City of Westlake Letter at 1, 4, 6.

or county, TEX. LOC. GOV'T CODE ANN. § 271.043(7) (Vernon 1999),[5] to authorize certificates to pay for certain contractual obligations. Because the Act authorizes municipalities and counties to create debt, it has been strictly construed to authorize a city or county to issue certificates only for those purposes expressly authorized. *See Lopez v. Ramirez*, 558 S.W.2d 954, 957 (Tex. Civ. App.–San Antonio 1977, no writ) ("We assume that if the legislature, in passing the Act of 1971, intended that the county could issue the certificates of obligation for any purpose, it would have said so, and by expressing its intention in Sec. 3(a) it intended to limit the purposes for which certificates of obligation could be issued."). This construction is consistent with the long-standing rule that "[s]tatutes respecting the power of local governments to create a debt must be strictly and narrowly construed." *Id.* (citing *San Antonio Union Junior Coll. Dist. v. Daniel*, 206 S.W.2d 995 (Tex. 1947), and *Robertson v. Breedlove*, 4 S.W. 209 (Tex. 1884)).

Some of the Act's provisions authorize municipalities or counties to issue certificates for specific kinds of projects. *See, e.g.,* TEX. LOC. GOV'T CODE ANN. §§ 271.045(c) (Vernon Supp. 2003) (authorizing certificates to pay "a municipality's obligations incurred by contract for interests in and rights to water or sewer treatment capacity in connection with a water supply and transmission project or sewer treatment or collection project"), 271.046(a) (Vernon 1999) (authorizing certificates to pay contractual obligations incurred by counties in "constructing or equipping a jail," "constructing, renovating, or otherwise improving a county-owned building," or "constructing a bridge that is part of or connected to a county road or an approach to such a bridge"), 271.0461 (Vernon 1999) (authorizing certificates to pay a municipality's contractual obligations "incurred in demolishing dangerous structures or restoring historic structures"). Importantly, however, the Act as a general matter does not authorize issuers to undertake specific kinds of projects but merely authorizes issuers to create debt to finance them.

The City of Westlake would like to issue certificates to construct a facility for its charter school pursuant to section 271.045(a) of the Certificate of Obligation Act,[6] which provides that an issuer may authorize certificates "to pay a contractual obligation to be incurred for," among other things, the "construction of any public work" or "purchase of materials, supplies, equipment, machinery, buildings, land, and rights-of-way for authorized needs and purposes." *Id.* § 271.045(a)(1)-(2) (Vernon Supp. 2003). Unlike the Act's provisions that authorize certificates for particular kinds of projects, *see id.* §§ 271.045(c), 271.046, 271.0461, *supra*, section 271.045(a) is general in scope. In order to determine whether section 271.045(a) authorizes a county or municipality to issue certificates to pay for a contractual obligation incurred for a project or purchase, we must first look outside the Act to ascertain whether the issuer is authorized to undertake the particular public work or purchase. *See, e.g., Navarro Auto-Park, Inc. v. City of San Antonio*, 574 S.W.2d 582, 584 (Tex. Civ. App.–San Antonio 1978, writ refused n.r.e) (relying on case law to

---

[5]We assume that the City of Westlake is eligible to proceed under the Certificate of Obligation Act. *See* TEX. LOC. GOV'T CODE ANN. § 271.044(a) (Vernon 1999) (providing that a municipality may use the Certificate of Obligation Act only if it "(1) is incorporated under the home-rule amendment to the constitution (Article XI, Section 5, of the Texas Constitution); or (2) is incorporated under a general or special law and the municipality has the authority to levy an ad valorem tax of not less than $1.50 on each $100 valuation of taxable property in the municipality.").

[6]*See* City of Westlake Letter, *supra* note 4, at 1.

conclude that a city-owned off-street parking garage was a "public work" for which a city was authorized to issue certificates under the Certificate of Obligation Act) (citing *Amstater v. Andreas*, 273 S.W.2d 95 (Tex. Civ. App.–El Paso 1954, writ ref'd n.r.e.)).

No provision outside the open-enrollment charter school provisions in the Education Code authorizes a city to operate a school,[7] and no provision authorizes a city to construct a school building. Nor does any Texas judicial or attorney general opinion indicate that operating or constructing a school is within a city's authority. Traditionally, Texas cities and school districts have exercised separate powers, and the authority to operate and support schools with public funds has been reserved to school districts. *See City of Rockdale v. Cureton*, 229 S.W. 852, 853 (Tex. 1921) (city that had taken over local school district pursuant to constitutional and statutory authority "acquired [a] dual character. It has its powers as strictly a municipality, to be exercised for strictly municipal purposes; and it had its powers as a duly constituted independent school district. The two are not to be confused."). For that reason, a Type A general-law municipality has no inherent authority to operate or construct a school, and that authority may not be implied from the municipality's general authority to manage and control its property. *See, e.g.,* TEX. LOC. GOV'T CODE ANN. §§ 51.012 (Vernon 1999) (Type A general-law municipality "may adopt an ordinance, act, law, or regulation, not inconsistent with state law, that is necessary for the government, interest, welfare, or good order of the municipality as a body politic"), 51.015 (authority of a Type A general-law municipality to manage and control its property).

Significantly, the legislature has now expressly provided in section 12.101(a) of the Education Code that a municipality is eligible to obtain a charter for and to operate an open-enrollment charter school. *See* TEX. EDUC. CODE ANN. § 12.101(a) (Vernon Supp. 2003). In light of this statutory authority, it would seem to follow that a municipality is authorized to construct a facility for its open-enrollment charter school and to issue certificates of obligation to finance the construction.

Importantly, however, section 12.101(a) of the Education Code does more than authorize the State Board of Education to grant charters to "eligible entities" and define that term. *See id.* As it has since 1995,[8] section 12.101(a) also governs *where* an eligible entity may operate its charter school, expressly providing that the Board "may grant a charter on the application of an eligible entity for an open-enrollment charter school *to operate in a facility of a commercial or nonprofit entity or a school district*, including a home-rule school district." *Id.* (emphasis added). Section 12.101(a) is similar to provisions in subchapters C and E of chapter 12 that govern where other types

---

[7]In 1995, the legislature repealed former chapter 24 of the Education Code, which had provided for municipal school districts, but allowed a school district operating under former law to continue to do so. *See* Act of May 27, 1995, 74th Leg., R.S., ch. 260, §§ 1 (enacting Education Code, section 11.301 continuing former law), 58(a)(1) (repealing former chapter 24), 1995 Tex. Gen. Laws 2207, 2234, 2498. Moreover, under that former law a city and its municipal school district exercised authority as distinct legal entities. *See City of Rockdale v. Cureton*, 229 S.W. 852, 853 (Tex. 1921).

[8]*See* Act of May 27, 1995, 74th Leg., R.S., ch. 260, § 1, 1995 Tex. Gen. Laws 2207, 2244 (enacting Education Code, section 12.101(a)).

of charter schools will be operated. *See id.* §§ 12.052(a) (Vernon 1996) ("the board of trustees of a school district or the governing body of a home-rule school district may grant a charter to parents and teachers *for a campus or a program on a campus*") (emphasis added), 12.152(a) (Vernon Supp. 2003) ("the State Board of Education may grant a charter on the application of a public senior college or university for an open-enrollment charter school *to operate on the campus of the public senior college or university or in the same county in which the campus of the public senior college or university is located*") (emphasis added).

Section 12.101(a) does not contemplate that an eligible entity will operate a charter school in a municipal facility. Reading section 12.101(a) according to its plain language, the phrase "a facility of a commercial or nonprofit entity" means the facility of a private entity. Section 12.101(a) separately lists the facility of "a school district." If a public entity were included within the term "nonprofit entity," the reference to a school district would be redundant. *See Chevron Corp. v. Redmon*, 745 S.W.2d 314, 316 (Tex. 1987) (Texas Supreme Court "will give effect to all the words of a statute and not treat any statutory language as surplusage if possible") (citing *Perkins v. State*, 367 S.W.2d 140, 146 (Tex. 1963)); TEX. GOV'T CODE ANN. § 311.021(2) (Vernon 1998) (in enacting a statute, it is presumed that "the entire statute is intended to be effective") (Code Construction Act). Moreover, section 12.101(a) uses the term "nonprofit entity" whereas section 12.101(a)(4) uses the term "governmental entity," which includes a municipality. *See* discussion *supra* page 2. The fact that the legislature used both terms in the statute suggests that the legislature intended them to have different meanings, as is the case with other statutes where the legislature has used both terms, clearly differentiating between "governmental entities" and private "nonprofit entities."[9] The phrase "a facility of a commercial or nonprofit entity" does not include the facility of a governmental entity such as a municipality.

Because section 12.101(a) states where an eligible entity may operate a charter school and does not provide for operation of a charter school by an eligible entity in a municipal facility, it appears that the legislature has withheld the authority to operate a charter school in a municipal

---

[9]*See, e.g.,* TEX. OCC. CODE ANN. § 952.102(a) (Vernon 2003) ("An applicant for a certificate or the renewal of a certificate issued under this chapter must: (1) be operated by: (A) *a governmental entity*; or (B) *a nonprofit entity* exempt from the payment of federal income taxes under Section 501(a) of the Internal Revenue Code of 1986 and its subsequent amendments by being listed as an exempt entity under Section 501(c)(3), 501(c)(4), or 501(c)(6) of that code.") (emphasis added); TEX. PARKS & WILD. CODE ANN. § 11.103(a) (Vernon 2002) ("The department shall inventory all land and water associated with historical, natural, recreational, and wildlife resources in this state that are owned by: (1) *governmental entities*; or (2) *nonprofit entities* that offer access to the land or water to the public.") (emphasis added); *see also* TEX. TRANSP. CODE ANN. §§ 456.001(2) (Vernon 1999) ("'Designated recipient' means an entity that receives money from the United States or this state for public transportation through the department or the Federal Transit Administration or the administration's successor and is a transit authority, *a municipality* not included in a transit authority, *a local governmental body, another political subdivision* of this state, or *a nonprofit entity* providing rural public transportation service.") (emphasis added), 458.001 (2) ("'Rural public transportation provider' means: (A) *a nonprofit entity, local governmental body* created under Chapter 791, Government Code, or *political subdivision of this state*, which on August 31, 1995, provided rural public transportation services and received state or federal public transportation money through the department, the Federal Transit Administration, or the administration's successor.") (emphasis added); TEX. WATER CODE ANN. § 15.602(7) (Vernon Supp. 2003) ("'Nonprofit noncommunity water system' means a public water system that is not operated for profit and that: (A) is owned by *a political subdivision or nonprofit entity*; and (B) is not a community water system.") (emphasis added).

facility. From this omission, we must conclude that operation of a charter school in a municipal facility is not authorized. *See In re Bell*, 91 S.W.3d 784, 790 (Tex. 2002) ("It is a rule of statutory construction that every word of a statute must be presumed to have been used for a purpose. Likewise, . . . every word excluded from a statute must also be presumed to have been excluded for a purpose. This rule complements another general statutory construction principle that courts should not insert words in a statute except to give effect to clear legislative intent.") (citing *Quick v. Austin*, 7 S.W.3d 109, 123 (Tex. 1998), *Laidlaw Waste Sys., Inc. v. City of Wilmer*, 904 S.W.2d 656, 659 (Tex. 1995), and *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981)).[10]

In sum, a municipality's authority to operate a school depends entirely upon the open-enrollment charter school provisions in the Education Code. Because section 12.101(a) of the Education Code precludes a municipality from operating its charter school in a municipal facility, a municipality lacks authority to construct a charter school facility and may not pay for obligations incurred in constructing such a facility with certificates of obligation. *See* TEX. LOC. GOV'T CODE ANN. § 271.045(a)(1)-(2) (Vernon Supp. 2003); *Lopez v. Ramirez*, 558 S.W.2d 954, 957 (Tex. Civ. App.–San Antonio 1977, no writ) (strictly construing Certificate of Obligation Act to authorize a city or county to issue certificates only for those purposes expressly authorized).

Your query also raises a constitutional issue. In particular, in 1990 this office considered whether article III, section 52 of the Texas Constitution, which prohibits a municipality from using its funds except "'for the direct accomplishment of a legitimate public purpose,'" precludes a municipality from issuing bonds to buy land and construct a school building to lease to the local school district. *See* Tex. Att'y Gen. Op. No. JM-1255 (1990) at 3 (citing *Brazoria County v. Perry*, 537 S.W.2d 89, 91 (Tex. Civ. App.–Houston [1st Dist.] 1976, no writ)); *see also* TEX. CONST. art. III, § 52(a) ("Except as otherwise provided by this section, the Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever . . . ."). After reviewing several judicial opinions holding that cities are prohibited from using municipal funds to provide financial support for school districts, *see San Antonio Indep. Sch. Dist. v. Bd. of Trs. of the San Antonio Elec. & Gas Sys.*, 204 S.W.2d 22, 25 (Tex. Civ. App.–San Antonio 1947, writ ref'd n.r.e.) (a city may not donate funds to an independent municipal corporation such as a school district); *City of El Paso v. Carroll*, 108 S.W.2d 251, 257 (Tex. Civ. App.–El Paso 1937, writ ref'd) (a city could not lend or donate public funds to school district, which was a separate municipal corporation); *see also City of Rockdale*, 229 S.W. at 853 (holding that city debt limitations did not apply to a bond issue for city acting as independent school district because city taxed separately for each purpose), the opinion concluded that "municipal powers and purposes do not include those reserved to school districts for the provision and maintenance of schools, including the power to finance and construct school buildings or facilities." Tex. Att'y Gen. Op. No. JM-1255 (1990) at 7.

---

[10]By contrast, in 2001 the legislature amended the Education Code to authorize public senior colleges and universities to operate open-enrollment charter schools in their facilities. *See* Act of May 28, 2001, 77th Leg., R.S., ch. 1504, § 19, 2001 Tex. Gen. Laws 5344, 5355 (enacting Education Code, section 12.152(a)); TEX. EDUC. CODE ANN. § 12.152(a) (Vernon Supp. 2003) ("the State Board of Education may grant a charter on the application of a public senior college or university for an open-enrollment charter school *to operate on the campus of the public senior college or university or in the same county in which the campus of the public senior college or university is located*") (emphasis added).

The Seventy-eighth Legislature is currently considering legislation that would permit an eligible entity to operate a charter school in its own facility and would expressly authorize a municipality that is granted a charter to borrow funds, issue obligations, and spend its funds to construct buildings for the charter school. *See* Tex. H.B. 1564, 78th Leg., R.S. (2003). If municipalities are granted statutory authority to operate charter schools in municipal facilities and to construct facilities for their charter schools, using municipal funds to construct such a facility would accomplish a legitimate public purpose of a municipality under article III, section 52 of the Texas Constitution. *See Tex. Mun. League Intergovernmental Risk Pool v. Tex. Workers' Comp. Comm'n*, 74 S.W.3d 377, 383 (Tex. 2002) (article III, section 52(a) "does not prohibit payments to individuals, corporations, or associations so long as the statute requiring such payments: (1) serves *a legitimate public purpose*; and (2) affords a clear public benefit received in return") (emphasis added). Moreover, such an expenditure would not benefit a private corporation or association but rather an open-enrollment charter school, which is "part of the public school system of this state," TEX. EDUC. CODE ANN. § 12.105 (Vernon Supp. 2003). *See Tex. Mun. League Intergovernmental Risk Pool*, 74 S.W.3d at 384 (while article III, section 52(a) "prohibits granting public money to private individuals or commercial enterprises, it does not prohibit transfers to a state agency"). Furthermore, because an open-enrollment charter school is separate from any school district, this arrangement would not constitute a transfer of municipal funds to a school district.

## S U M M A R Y

Because section 12.101(a) of the Education Code does not authorize a municipality to operate an open-enrollment charter school in a municipal facility, a municipality is not authorized to issue certificates of obligation to finance such a facility's construction.

The Seventy-eighth Legislature is currently considering legislation that would permit an eligible entity to operate an open-enrollment charter school in its own facility and would expressly authorize a municipality that is granted a charter to borrow funds, issue obligations, and spend its funds to construct buildings for the charter school. *See* Tex. H.B. 1564, 78th Leg., R.S. (2003). This legislation would authorize a municipality to issue certificates of obligation to finance construction of a facility for its open-enrollment charter school. If municipalities are granted statutory authority to operate charter schools in municipal facilities and to construct facilities for their charter schools, using municipal funds to construct such a facility would accomplish a legitimate public purpose of a municipality under article III, section 52 of the Texas Constitution.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General, Opinion Committee