**Daryl A. MILLER, Plaintiff,**

v.

**AT & T NETWORK SYSTEMS, an AT & T Technologies, Inc. Group, Defendant.**

**Civ. No. 86–411–FR.**

United States District Court, D. Oregon.

Sept. 21, 1989.

Michael J. Tedesco, Tedesco & Wilson, Portland, Or., James M. Brown, Enfield, Guimond & Brown, Salem, Or., for plaintiff.

Richard N. Van Cleave, Steven J. Nemirow, Spears, Lubersky, Bledsoe, Anderson, Young & Hilliard, Portland, Or., for defendant.

FRYE, District Judge:

The matters before the court are:

1. Defendant, AT & T Network Systems' (AT & T's), motion (# 44) for summary judgment on the amended complaint of plaintiff, Daryl A. Miller, pursuant to Fed. R.Civ.P. 56; and

2. Miller's motion (# 41) for partial summary judgment on the issue of liability pursuant to Fed.R.Civ.P. 56 and for a separate trial on the issue of damages pursuant to Fed.R.Civ.P. 42(b).

## BACKGROUND

Miller was employed by AT & T or its predecessor, Western Electric Company, from October 24, 1964 through July 2, 1985. In his original complaint, Miller al-

leged four claims for relief arising out of his employment with AT & T. This court granted AT & T's motion to dismiss all four claims. Miller appealed. The Ninth Circuit Court of Appeals reversed in part, affirmed in part, and remanded the case for further proceedings. 850 F.2d 543.

Miller then filed an amended complaint stating two claims for relief: 1) discrimination on the basis of handicap under O.R.S. 659.425, and 2) common law wrongful discharge.

### APPLICABLE STANDARD

Summary judgment should be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). The burden to establish the absence of a material issue of fact for trial is on the moving party. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). This burden "may be discharged by 'showing' ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The burden shifts to the nonmoving party to "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553.

Assuming there has been adequate time for discovery, summary judgment should then be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. All inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). When different ultimate inferences can be reached, summary judgment is not appropriate. *Sanko-*

*vich v. Life Ins. Co. of N. Am.*, 638 F.2d 136 (9th Cir.1981).

Finally, summary judgment is inappropriate where credibility is at issue. Credibility issues are appropriately resolved only after an evidentiary hearing or full trial. *SEC v. Koracorp Indus.*, 575 F.2d 692, 699 (9th Cir.), *cert. denied*, 439 U.S. 953, 99 S.Ct. 348, 58 L.Ed.2d 343 (1978).

### CONTENTIONS OF THE PARTIES

AT & T contends that it is entitled to summary judgment on Miller's first claim for relief for the following reasons: 1) a necessary element of Miller's statutory claim pursuant to O.R.S. 659.425 is that AT & T discharged Miller, and there is no evidence in the record that AT & T discharged Miller; 2) Miller is not a handicapped person within the meaning of O.R.S. 659.425 because his impairment is not one which substantially limits one or more major life activities; and 3) if Miller is a handicapped person within the meaning of O.R.S. 659.425, he is not a handicapped person protected by O.R.S. 659.425 because he is unable to perform the duties of his employment in spite of his handicap.

AT & T contends in the alternative that even if Miller is handicapped and fully protected by O.R.S. 659.425, AT & T fulfilled its duty to reasonably accommodate Miller. AT & T also argues in the alternative that Miller's requested accommodation would have posed an undue hardship on AT & T because 1) AT & T would have been forced to require other employees to be temporarily transferred a disproportionate number of times; and 2) by the terms of the collective bargaining agreement by which AT & T was bound, AT & T was required to rotate temporary transfers equally.

Finally, AT & T argues that Miller's statutory claim is pre-empted by section 301 of the Labor Management Relations Act because the court must look into the collective bargaining agreement to determine the validity of Miller's claim. AT & T argues that this court is not precluded from reviewing the preemption issue because discovery has not been completed, and dis-

covery had not been completed when the issue was before the Court of Appeals.

Miller contends that he is entitled to summary judgment on the issue of AT & T's liability for the following reasons: 1) he is a handicapped person within the meaning of section 659.425(1) because his sensitivity to heat limits his employment; 2) he was discharged and is therefore protected by the terms of the handicap statute; and 3) the record demonstrates an absence of facts which would support AT & T's defense that it reasonably accommodated him.

Miller argues that AT & T did not accommodate him because AT & T could have assigned him to work in geographical areas with moderate climates or could have provided reasonable transportation to his work site and a cool work place in the State of Arizona; and that all of AT & T's affirmative defenses are legally insufficient.

## UNDISPUTED FACTS

Miller was employed as an installer by AT & T from January 1, 1984 to July 2, 1985. Miller had been employed by AT & T's predecessor, Western Electric Company, from October 24, 1965 to January 1, 1984. Miller was classified as an Index 5, ESS 1A Installer—that is, he was one of a group of the most proficient and skilled installers employed by Western Electric and then AT & T. Index 5, ESS 1A Installers work in a climate-controlled, humidified environment because the switching equipment requires this kind of environment. The wages, hours and working conditions of Miller's employment were established and controlled by a collective bargaining agreement.

At the time that Miller applied for employment with Western Electric in 1964, the employment application contained the following statement: "I understand that I am applying for work in the installation organization of the Western Electric Company and that I will be required in the course of such employment to travel and I expressly agree to do so as and when called upon." At the time that Miller applied for employment with Western Electric, he did not inform the company of any restrictions on his ability to travel.

The collective bargaining agreement which governs Miller's employment with AT & T provides: "The Company and the Union agree that the character of installation work makes it necessary for an Employee to move to and from Job Locations and Work Locations. The Company will affect such a move by a Local Assignment, a Temporary Transfer or a Permanent Transfer." The collective bargaining agreement also contains provision for local assignments, temporary transfers, and permanent assignments.

The collective bargaining agreement between AT & T and Miller's labor union requires that temporary transfers be rotated among installers at any given base location. This is also the policy of AT & T.

Travel is a necessary component of telephone installation work. AT & T policy requires that installers be able to travel anywhere in the United States according to company needs. If an applicant for employment cannot meet the travel requirement, he is not eligible for hire as an installer for AT & T. Miller concedes that AT & T has a legitimate business need for telephone installers who are able to travel to wherever they are needed.

Temporary transfers are the means by which AT & T moves installers from those areas where there is a surplus of installers to those areas where there is a need for additional installers. Employees of AT & T may be temporarily transferred from their base locations to other locations within their state or to geographical regions other than their base locations or to anywhere in the United States.

In 1984, as part of the divestiture of the Bell System, AT & T retained what was formerly known as Western Electric. After the divestiture, local operating companies increased their reliance on the equipment and installation services of vendors other than AT & T. Local operating companies also began to perform some of their own work with their own installers. As a result of these changes, the number of

installers employed by AT & T in the State of Oregon decreased in number, and those installers who remained in the State of Oregon were more frequently subject to temporary transfers.

In 1982, Miller was told that he would be temporarily transferred to the State of Florida. In response, Miller obtained a note from his doctor which provides as follows:

To Whom it May Concern:

Mr. Daryl Miller has repeatedly demonstrated heat exhaustion to the point of exacerbation of Paroxysmal Atrial Tachycardia. I recommend he remain in a temperate climate. Any consideration that you can give this patient would be greatly appreciated.

Sincerely,

D. Daryl Atkinson, M.D.

Thereafter, Miller was evaluated by Dr. Joseph Thaler, a physician retained by AT & T. Dr. Thaler recommended to AT & T that Miller avoid working in temperatures greater than ninety degrees. As a result of the opinions of these two doctors, AT & T limited Miller's work environment to temperatures ninety degrees or under.

In January, 1985, AT & T notified Miller that he would be temporarily transferred to Omaha, Nebraska. On January 8, 1985, Miller provided AT & T with the following note from his doctor:

To Whom it May Concern:

Re: Daryl Miller

This 39 year old gentleman has asthma based on Pollenosis. He is currently stable on his medications and desensitized program with Dr. Charles Wagner.

I believe he will suffer adversely if he is transferred to a dry, cold climate, particularly if he is working indoors and outdoors alternately.

I hope this helps you to help this patient.

Sincerely,

D. Daryl Atkinson, M.D.

AT & T did not temporarily transfer Miller to the State of Nebraska.

In the Spring of 1985, Miller was temporarily transferred to Mesa, Arizona. Miller was temporarily transferred to Mesa, Arizona because 1) there was a need for Index 5, ESS 1A Installers in Mesa, Arizona; 2) there was a surplus of Index 5, ESS 1A Installers in Salem, Oregon; 3) Miller was not performing Index 5, ESS 1A work in Salem, Oregon at the time that he was temporarily transferred to Mesa, Arizona; and 4) of the three Index 5, ESS 1A Installers based in Salem, Oregon, it was Miller's turn to be temporarily transferred.

Miller advised his supervisors of his work restriction, i.e. that he could not work in temperatures over 90°. The temporary transfer was delayed and Dr. James E. Wassenmiller, a board certified internist with a specialty in cardiology was retained by AT & T to give Miller a stress test. Dr. Wassenmiller agreed with prior physicians that Miller should avoid strenuous work in hot weather.

After reviewing Dr. Wassenmiller's report and Miller's current medical record, Dr. Ralph Wexler, AT & T's medical director, wrote the following to AT & T:

After reviewing the medical record and recent reports from J.E. Wassenmiller, M.D., it is my opinion this employee may be transferred outside his base area with the only limitation being that he avoid strenuous exertion when working in temperatures (indoor) of 90° F.

Thereafter, AT & T again informed Miller that he would be temporarily transferred to Mesa, Arizona.

Miller reported to Mesa, Arizona at the end of May, 1985. He was housed in an air conditioned hotel. He worked without incident for approximately two weeks. On June 10, 1985, Miller became light-headed while working indoors where the air conditioning vents had, for some reason, been closed. Miller's supervisor opened the air conditioning vents, and Miller went to a doctor.

Miller returned to work on June 11, 1985. Miller worked without incident on June 11, 12, 13, 14, 17, 18, 19, 20 and 21, 1985. On June 21, 1985, Miller advised AT & T that he was returning to Salem, Oregon because he could no longer "gamble" with his

health. On June 22, 1985, Miller returned to Salem, Oregon.

On June 24, 1985, Miller was advised by his union representative that he should go back to Mesa, Arizona. On June 25, 1985, Miller was advised by his union vice president that he had to go back to Mesa, Arizona before the union could work with him. On July 1, 1985, Miller was advised by his union president that AT & T would treat him as having resigned unless he went back to Mesa, Arizona. On July 2, 1985, Miller received a telegram from AT & T indicating that the company considered his resignation effective July 1, 1985.

On July 11, 1985, Miller was advised by his union representative that it was the union's position that there was no contract violation by AT & T arising from either Miller's temporary assignment to Mesa, Arizona, or his "forced" resignation by AT & T.

On deposition, Miller was asked why he returned to Salem, Oregon rather than staying in Mesa, Arizona to complete his work assignment. His response was as follows:

Q. And at that time did you have any reason to believe that the next week you wouldn't be able to function just as you had the first two weeks?

A. Other than perhaps losing my sanity from being locked up in the confined areas to stay cool, no.

Q. Well, I see that—you say lose your sanity. I see there's lots of references where you spend time outside.

A. Well, yeah, but how far outside do you dare go?

Q. Well, you knew that—apparently you were willing to spend two hours out in excess of a hundred degrees if you stayed in the pool. If you wanted to spend outside—apparently there's a pool available. Why didn't you go out in the pool, then?

A. There was a pool available, but you're still confined to an area that is, you know—in twenty minutes you can explore every crook and nanny [sic] of it.

How long are you going to be satisfied in that confined area?

## ANALYSIS AND DISCUSSION

1. *Claim One—Statutory Discrimination*

In his first claim for relief, Miller alleges that AT & T unlawfully discriminated against him pursuant to ORS § 659.425. Specifically, Miller alleges that he was unlawfully terminated from AT & T's employment because of a physical impairment which, with reasonable accommodation by AT & T, did not prevent the performance of the work involved. Both Miller and AT & T move for summary judgment on this claim.

### a. *Constructive Discharge*

The linchpin of Miller's discrimination claim is the allegation that "defendant terminated plaintiff." Complaint, paras. 13 & 14. AT & T argues that Miller's discrimination claim must fail because AT & T did not in fact terminate Miller. Rather, Miller voluntarily quit his employment with AT & T by his refusal to return work in Mesa, Arizona.

Miller disputes AT & T's assertion that he voluntarily quit his employment with AT & T. Although AT & T regarded Miller as having voluntarily resigned effective July 1, 1985 due to his failure to return to work in Arizona, Miller argues that when AT & T refused to accommodate him and forced him to choose between either working in a health-threatening environment or preserving his health, he was constructively discharged or forced to resign from AT & T's employment.

There is a question whether the Oregon courts recognize the concept of "constructive discharge." The Oregon Supreme Court recently held that in a wrongful discharge setting, the resignation of an employee who has been told unconditionally to resign or be fired may be found to be wrongfully discharged by the trier of fact. *Sheets v. Knight*, 308 Or. 220, 779 P.2d 1000 (1989). Thus, the Oregon Supreme Court clearly recognizes the doctrine of constructive discharge in an employment

setting. Miller's allegation that he was forced to resign in order to avoid a health-threatening environment created by his employer is sufficient to allege a constructive discharge.

■ AT & T has presented evidence that Miller was not forced to quit, but rather voluntarily resigned. A question of fact exists for the jury whether Miller was constructively discharged or whether he voluntarily left AT & T's employment. Alternatively, Miller claims that he was willing and able to return to work in any position that did not threaten his health. He contends that he specifically informed AT & T of his desire to return to work and requested an assignment. There may also be a question of fact as to whether Miller's health was actually threatened while working in Arizona. Consequently, there is a question of fact for the jury whether AT & T constructively discharged plaintiff by forcing him to work in an environment which threatened his health and safety.

b. *Handicapped Person*

■ ORS 659.425(1) provides:

[I]t is an unlawful employment practice for any employer to ... bar or discharge from employment or to discriminate in compensation or in terms, conditions or privileges of employment because:

(a) An individual has a physical or mental impairment which, with reasonable accommodation by the employer, does not prevent the performance of the work involved;

(b) An individual has a record of a physical or mental impairment; or

(c) An individual is regarded as having a physical or mental impairment.

" 'Physical or mental impairment' means an apparent or medically detectable physical or mental condition which substantially limits one or more major life activities, as defined in ORS § 659.400(3)." OAR 839–06–205(7). "Employment" is a major life

activity within the meaning of the statute. ORS § 659.400(3).

To succeed in his discrimination claim, Miller must first establish that he is a "handicapped person" within the meaning of the statute. *See* ORS § 659.400(2). For the purposes of this motion, AT & T concedes that Miller's heat sensitivity and asthma constitute "apparent or medically detectable physical" conditions. However, AT & T argues that Miller's conditions do not "substantially limit one or more major life activities" so as to place him within the statute's protection.

An impairment which only interferes with an individual's ability to do one particular job with one particular employer, but which does not significantly decrease the individual's ability to obtain satisfactory employment otherwise, is not "substantially" limiting within the meaning of the statute. *Jasany v. United States Postal Service*, 755 F.2d 1244, 1248–49 (6th Cir.1985); *E.E. Black, Ltd. v. Marshall*, 497 F.Supp. 1088, 1099–1100 (D.Haw.1980).[1] In other words, in order to come within the protection of the statute, the impairment must substantially limit an individual's employability generally, and not just with respect to one particular job.

On this basis, the court rejects Miller's contention that in order to establish an impairment which significantly affects his employment, he must only show that his ability to obtain a single position was limited by his handicap. Rather, Miller must prove that his handicap does more than just limit his ability to perform the AT & T installer job, which by its own terms requires significant travelling all around the country.

Miller is presently employed performing electrical installation work for another employer. Thus, it is clear that Miller's impairments do not preclude him from obtaining other satisfactory employment as an installer. He is only precluded from the

---

1. For consistency purposes, the Oregon legislature adopted the federal definitions of "handicapped person" and "reasonable accommodation" for the Oregon discrimination statutes. It was also intended that in interpreting those

terms, the courts could "follow the federal cases; using the federal language as a built-in body of precedents." Minutes of Senate Committee on the Judiciary, June 27, 1979.

AT & T installer position because he is unable to accept temporary transfers to other parts of the country where the temperature exceeds 90 degrees due to his impairment. Miller has not shown that his impairment limits his employment as an installer with anyone besides AT & T.[2] Certainly, other installer positions do not require travel. On this basis, the court finds that Miller's heat sensitivity is not an impairment which "substantially" limits his employment.

■ This finding, however, does not end the "handicap" inquiry. ORS 659.425(1) extends protection, not only to persons who have physical impairments that substantially limit major life activities, but also to persons having physical impairments that do not substantially limit major life activities but who are treated by employers as having such limitations. *See* ORS 659.-400(3)(c)(A). The question then becomes whether Miller's heat sensitivity was treated by AT & T as an impairment which substantially limited his employment.

An employer does not necessarily regard an employee as handicapped simply by finding that the employee is incapable of satisfying the singular demands of a particular job. *Forrisi v. Bowen*, 794 F.2d 931, 934 (4th Cir.1986). The statutory reference to a "substantial" limitation indicates instead that an employer regards an employee as handicapped in his ability to work by finding the employee's impairment to foreclose generally the type of employment involved. *Id.*

It is undisputed that Miller possesses the background and skill necessary to perform the duties of an Index 5 installer. Miller is only unable to perform those duties in work environments where the temperature exceeds 90 degrees F. It is uncontroverted that Miller is presently employed as an installer for another company. Therefore, far from being regarded as having a "substantial limitation" in employability, AT & T viewed Miller as unsuited for only one position, that of Index 5, ESS 1A installer,

and nothing more, for the reason that that position requires travel to places where temperatures may exceed 90 degrees F.

Adoption of Miller's argument would imply that anyone who failed to obtain a single job because of a single requirement of employment would become a handicapped individual because the employer would thus be regarding the employee's failure as a handicap. This was clearly not the intent of the Oregon discrimination statutes. The Oregon discrimination statutes seek to remedy handicaps that, like actual disabilities, extend beyond the isolated mismatch of employer and employee.

Accordingly, AT & T's motion for summary judgment on the statutory discrimination claim is granted because Miller is not a "handicapped" person within the meaning of the Oregon discrimination statutes. In light of this ruling, the court need not address AT & T's other arguments in support of its motion for summary judgment on the statutory discrimination claim.

### 2. *Common Law Wrongful Discharge*

■ In his amended complaint, Miller alleges a second claim for relief, common law wrongful discharge. Specifically, Miller alleges that he was discharged from AT & T's "employment because he claimed and otherwise pursued his right to accommodation of the physical condition in his employment which is a private right protected by statute." AT & T argues that Miller's wrongful discharge claim is barred by the doctrine of the "law of the case."

In addition to three other claims, Miller's original complaint alleged a claim for common law wrongful discharge. On July 30, 1986, this court granted AT & T's motion to dismiss all four claims. On appeal to the Ninth Circuit Court of Appeals, Miller did not cite as error this court's dismissal of the wrongful discharge claim. Consequently, the Ninth Circuit affirmed this court's judgment with respect to the wrongful discharge claim. Plaintiff did not appeal any part of the Ninth Circuit's decision.

---

**2.** Miller argues that AT & T's job requirement, i.e., that he work in extreme temperatures, is required by all employers, and would thus bar

Miller from any position. This assertion is not supported by the evidence.

Following the remand, Miller filed an amended complaint which alleged handicap discrimination and common law wrongful discharge. Except with respect to the addition of a claim for punitive damages, the wrongful discharge claim is identical to the claim which this court dismissed on July 30, 1986.

The "law of the case" is a judicial doctrine which provides "that, in order to maintain consistency during the course of a single case, reconsideration of questions previously decided should be avoided." *United States v. Mills*, 810 F.2d 907, 909 (9th Cir.1987). The doctrine thus operates to preclude further consideration of an issue by the trial court if that issue is not raised on appeal from the initial trial court order. *United States v. Russ*, 861 F.2d 184, 185 (8th Cir.1988). The Ninth Circuit is likewise precluded from reviewing this court's prior dismissal of the wrongful discharge claim in a subsequent appeal if the issue could have been but was not raised on the prior appeal. *Munoz v. County of Imperial*, 667 F.2d 811, 817 (9th Cir.1982).

Miller has failed to show that he appealed, or that the Ninth Circuit considered, the dismissal of his common law wrongful discharge claim. Moreover, Miller does not contest the fact that he had a full and fair opportunity to appeal this court's dismissal of that claim. Therefore, he is bound by his decision not to appeal the entry of judgment on his original wrongful discharge claim. Accordingly, the wrongful discharge claim is barred by the "law of the case" doctrine. AT & T's motion for summary judgment on the common law wrongful discharge claim is therefore granted.

## CONCLUSION

In light of the foregoing discussion, Miller's motion for partial summary judgment is denied, and AT & T's motion for summary judgment is granted. Both the statutory discrimination and the common law wrongful discharge claims are dismissed.