Ernest B. CECIL, Plaintiff/Appellee,

v.

Andrew B. GIBSON, F. Clay Bailey, Jr., John Bottom, Linton O'Brien, and Mildred Crouch, Sued in their Official Capacities as Members of the Metropolitan Civil Service Commission; and the Metropolitan Government of Nashville and Davidson County, Tennessee, Defendants/Appellants.

Court of Appeals of Tennessee, Middle Section at Nashville.

July 3, 1991.

Permission to Appeal Denied by Supreme Court Dec. 2, 1991.

Susan Short Jones, Law Director, Wm. Michael Safley, Nashville, for defendants/appellants.

Mark C. Scruggs, Nashville, for plaintiff/appellee.

## OPINION

KOCH, Judge.

This appeal involves a deputy sheriff whose application to become a police officer trainee was denied because he could not comply with Nashville's visual acuity standards for new police recruits. The applicant filed an action in the Chancery Court for Davidson County against the Metropolitan Government of Nashville and Davidson County and the Civil Service Commission, alleging that they had discriminated against him because of his visual handicap. The trial court, sitting without a jury, found that the applicant had a "perceived handicap" and that he had been unlawfully deprived of the opportunity to be a police trainee. The City and the Commission have appealed, asserting that they were entitled to a judgment as a matter of law because the applicant is not handicapped. We agree, and therefore, reverse the trial court.

### I.

Ernest B. Cecil seriously injured his right eye when he was three years old. While the injury left him with some peripheral vision in his right eye, he was unable to see straight ahead. Mr. Cecil overcame the injury and eventually received a football scholarship to Vanderbilt University. After leaving Vanderbilt, he went to work for the Tennessee Department of Correction as a canine officer and in 1986 joined the Metropolitan Sheriff's Department as a correctional officer. The City's medical examiner recommended two restrictions because of Mr. Cecil's eyesight: that he should not be permitted to operate a city vehicle and that he should wear protective glasses.

In August, 1987, Mr. Cecil underwent corrective surgery on his right eye to re-

move a large cataract, to transplant a cornea, to implant an artificial lens, and to realign the muscles. The operation improved Mr. Cecil's vision somewhat. He now has 20/400 vision in his right eye and perfect 20/20 vision in his left eye. However, even with the operation, Mr. Cecil can only "count fingers at four feet" with his right eye, and his 20/400 vision in that eye cannot be corrected.

Mr. Cecil applied to become a police officer trainee in December, 1987. The Metro Department of Personnel rejected his application because he did not meet the Metropolitan Charter's medical standards,[1] the Civil Service Commission's visual acuity standards for police officer trainees,[2] or the Metro Driver Safety Standards.[3] Mr. Cecil appealed to the Civil Service Commission. The Commission conducted a hearing in July, 1988 and affirmed the rejection of Mr. Cecil's application.

Mr. Cecil filed suit in September, 1988 alleging that he was visually handicapped and that the City and the Commission had discriminated against him in violation of Tenn.Code Ann. § 8–50–103 (Supp.1990). The trial court found that Mr. Cecil had a "perceived visual handicap" and that he was capable of performing as a police officer notwithstanding his visual impairment. Accordingly, the trial court found that the City had violated Tenn.Code Ann. § 8–50–103.

The trial court ordered that Mr. Cecil be permitted to enter the police training academy but determined that he should not be permitted to become a police officer if he graduated from the academy while this appeal was pending. Mr. Cecil enrolled in the police training academy in February, 1991

and successfully completed his training in June, 1991.[4] On June 21, 1991, we denied Mr. Cecil's motion to dissolve the trial court's order preventing him from becoming a police officer.

## II.

The controlling issue in this case is not whether Mr. Cecil is capable of doing police work but rather whether he has made out a claim under Tenn.Code Ann. § 8–50–103(a). In order to succeed, Mr. Cecil must prove that he has a "visual handicap" and that the City denied his application to be a police officer trainee solely because of his handicap. We have concluded that Mr. Cecil has not met the threshold requirement for a Tenn.Code Ann. § 8–50–103(a) cause of action. He has not proved that he has a visual handicap.

## A.

Mr. Cecil's cause of action rests exclusively on Tenn.Code Ann. § 8–50–103(a) which provides, in part:

There shall be no discrimination in the hiring, firing or other terms and conditions of employment of the state of Tennessee or any department, agency institution or political subdivision of the state, or of any private employer, against any applicant for employment based solely upon any physical, mental or visual handicap of the applicant, unless such handicap to some degree prevents the applicant from performing the duties required by the employment sought or impairs the performance of the work involved.

1. Section 8.208 of the Metropolitan Charter requires all employees in the classified service to "meet the physical requirements for admission to either the United States Army or Navy at the time of appointment and again at the close of the working probationary period." It is undisputed that Mr. Cecil does not comply with Department of the Army's Standards of Medical Fitness, Army Reg. 40–501 §§ 2–12(c)(2) & 2–12(g)(1) (1987) because he had a cornea transplant and cataract surgery.

2. The standards adopted by the Commission in 1975 required that "[t]he distant visual acuity in

each eye must not exceed 20/100 (Snellen) uncorrected and at least 20/20 (Snellen) corrected."

3. The Civil Service Commission adopted the Metro Driver Safety Standards in 1988. For police and fire employees, the standards required "[u]ncorrected 20/100 each eye, corrected 20/20 in better eye, 20/30 in the other eye."

4. We granted Mr. Cecil's motion to consider his enrollment in and graduation from the police training academy as post-judgment facts pursuant to Tenn.R.App.P. 14.

The statute does not define "physical, mental or visual handicap," nor does its legislative history provide insight into their intended meaning. Thus, we must look elsewhere for guidance in determining whether a particular person is visually handicapped for the purposes of Tenn.Code Ann. § 8-50-103(a).

We look first to Tennessee's human rights statutes since Tenn.Code Ann. § 8-50-103(b) gives persons who have been discriminated against solely because of a physical, mental, or visual handicap all the rights provided in Tenn.Code Ann. §§ 4-21-301, -311 (1985 & Supp.1990). At the time Mr. Cecil filed his action, the human rights statutes did not contain a definition of "handicap." However, the General Assembly later enacted Tenn.Code Ann. § 4-21-102(9)(A) (Supp.1990)[5] which provides:

> "Handicap" means, with respect to a person:
>
> (i) A physical or mental impairment which substantially limits one (1) or more of such person's major life activities;
>
> (ii) A record of having such an impairment; or
>
> (iii) Being regarded as having such an impairment.

This definition is taken, substantially verbatim, from the definition of "individual with handicaps" contained in the Federal Rehabilitation Act. *See* 29 U.S.C. § 706(8)(B) (1988).[6]

This court has recognized that Tenn.Code Ann. § 8-50-103 and the Federal Rehabilitation Act are complementary. *Leabow v. Swift–Eckrich, Inc.*, No. 1374, slip op. at 10 (Tenn.Ct.App. May 22, 1991). Therefore, especially in light of the similarity between the state definition of "handicap" and the federal definition of "individual with handicaps," we have determined that the decisions construing the federal statute and the regulations promulgated pursuant thereto provide an important source of guidance for determining whether a person is handicapped for the purposes of Tenn.Code Ann. § 8-50-103. *School Bd. of Nassau County v. Arline*, 480 U.S. 273, 279, 107 S.Ct. 1123, 1126, 94 L.Ed.2d 307 (1987); *Daley v. Koch*, 892 F.2d 212, 215 (2d Cir.1989); *Probasco v. Iowa Civil Rights Comm'n*, 420 N.W.2d 432, 435 (Iowa 1988); *Plourde v. Scott Paper Co.*, 552 A.2d 1257, 1262 (Me. 1989); *State ex rel. Cooper v. Hennepin County*, 425 N.W.2d 278, 283 (Minn.Ct. App.1988).

The Federal Rehabilitation Act does not define either "major life activities" or "is regarded as having such an impairment." The Equal Employment Opportunity Commission has, however, defined these terms in its regulations pertaining to equal opportunity in federal employment. According to these regulations, "major life activities" are

> functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.

29 C.F.R. § 1613.702(c) (1990), and the term "is regarded as having such an impairment" means

> (1) has a physical or mental impairment that does not substantially limit major life activities but is treated by an employer as constituting such a limitation; (2) has a physical or mental impairment that substantially limits major life activities only as a result of the attitude of an employer toward such impairment; (3) or has none of the impairments defined in (b) of this section but is treated by an employer as having such an impairment.

29 C.F.R. § 1613.702(e).

Other federal agencies have followed suit by promulgating similar regulations incorporating the EEOC's definitions. The Department of the Treasury, for example, has included the definitions in its regula-

---

**5.** *See* Act of April 12, 1990, ch. 937 § 1, 1990 Tenn.Pub.Acts 532.

**6.** 29 U.S.C. § 706(8)(B) defines an individual with handicaps as "any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such impairment, or (iii) is regarded as having such an impairment." Before the 1986 amendments to the Federal Rehabilitation Act, this definition appeared at *29 U.S.C.* § 706(7)(B).

tions proscribing discrimination against handicapped persons in state or local government programs receiving federal funds. *See* 31 C.F.R. § 51.55(a)(3) (1990) ("major life activities"); 31 C.F.R. § 51.55(a)(5) ("is regarded as having an impairment"). Even though these regulations may not be directly applicable to the City, they help elucidate the meaning of Tenn. Code Ann. §§ 8–50–103(a) and 4–21–102(9)(A).

### B.

In order to establish a case of handicap discrimination, the plaintiff must first prove the existence of a physical or mental impairment that substantially limits a major life activity. *Jasany v. United States Postal Serv.,* 755 F.2d 1244, 1248 (6th Cir. 1985); *Pushkin v. Regents of University of Colorado,* 658 F.2d 1372, 1387 (10th Cir.1981); *Jurgella v. Danielson,* 158 Ariz. 542, 764 P.2d 27, 29 (Ariz.Ct.App.1988).

An impairment must limit a person's general employability in order to substantially limit a major life activity. *Fuqua v. Unisys Corp.,* 716 F.Supp. 1201, 1206 (D.Minn.1989); *de la Torres v. Bolger,* 610 F.Supp. 593, 596–97 (N.D.Tex.1985). While "working" is a major life activity, working at the specific job of one's choice is not. *Forrisi v. Bowen,* 794 F.2d 931, 934–35 (4th Cir.1986); *Jasany v. United States Postal Serv.,* 755 F.2d at 1248; *Miller v. AT & T Network Sys.,* 722 F.Supp. 633, 639 (D.Or.1989); *Tudyman v. United Airlines,* 608 F.Supp. 739, 745 (C.D.Cal. 1984); *Salt Lake City Corp. v. Confer,* 674 P.2d 632, 636–37 (Utah 1983). Thus, the United States Court of Appeals for the Second Circuit has held that "[b]eing declared unsuitable for the particular position of police officer is not a substantial limitation on a major life activity." *Daley v. Koch,* 892 F.2d at 215.

### C.

Determinations concerning who is handicapped or whether an impairment substantially limits a major life activity should be made on a case-by-case basis. *Elstner v. Southwestern Bell Telephone Co.,* 659 F.Supp. 1328, 1342 (S.D.Tex.1987); *E.E. Black, Ltd. v. Marshall,* 497 F.Supp. 1088, 1099–1100 (D.Hawaii 1980). The inquiry should not be limited to the physical or mental condition alone, *Lyons v. Heritage House Restaurants, Inc.,* 89 Ill.2d 163, 59 Ill.Dec. 686, 690, 432 N.E.2d 270, 274 (1982), but should take into consideration the individual job seeker and the type of employment being sought. *Jasany v. United States Postal Serv.,* 755 F.2d at 1249.

The thrust of Mr. Cecil's entire case is that the impaired vision in his right eye has been no deterrent to him at all. He is an accomplished high school and college athlete, and he has held a variety of jobs in the corrections or law enforcement field since leaving college. He presently enjoys perfect health, and his ophthalmologist has certified that he "is capable of performing any job satisfactorily from a visual point of view." Mr. Cecil's eyesight has not substantially limited any of his major life activities. Accordingly, he has not proved that his visual impairment is a "visual handicap" for the purposes of Tenn.Code Ann. § 8–50–103(a).

Other courts presented with similar facts have reached the same conclusion by finding that an impairment need not be a handicap in order to prevent an applicant from meeting the visual acuity standards for police trainees or recruits. *Padilla v. City of Topeka,* 238 Kan. 218, 708 P.2d 543, 550 (1985); *State ex rel. Cooper v. Hennepin County,* 425 N.W.2d at 284–85; *City of Columbus v. Ohio Civil Rights Comm'n,* 23 Ohio App.3d 178, 492 N.E.2d 482, 486 (1985).

### III.

Mr. Cecil could succeed, even without evidence of a visual handicap, by proving that the City regarded him as having a visual handicap. *See* Tenn.Code Ann. § 4–21–102(9)(A)(iii). The trial court did not follow this rationale, choosing instead to find that Mr. Cecil had a "perceived visual handicap."

The Wisconsin Supreme Court originated the concept of a "perceived handicap." *See*

*Brown County v. Labor & Indus. Review Comm'n,* 124 Wis.2d 560, 369 N.W.2d 735, 740 (1985). We disapprove of this concept because it is inconsistent with the federal regulations and precedents construing terms that are substantially identical to those found in Tenn.Code Ann. § 4–21–102(9)(A). Under our statutes, the proper inquiry is whether the employer regards the applicant as having a physical or mental impairment which substantially limits one or more of the applicant's major life activities.

■ Mr. Cecil's only evidence that the City regarded him as having a visual handicap is the City's rejection of his application to be a police officer trainee. However, an employer is not deemed to have regarded an applicant as handicapped simply because it determines that the applicant does not meet the singular requirements of a particular job. *Daley v. Koch,* 892 F.2d at 215; *Forrisi v. Bowen,* 794 F.2d at 934–35; *Miller v. AT & T Network Sys.,* 722 F.Supp. at 640; *Tudyman v. United Airlines,* 608 F.Supp. at 746; *State ex rel. Cooper v. Hennepin County,* 425 N.W.2d at 285.

The only evidence in the record is that the City rejected Mr. Cecil's application because he did not meet the visual acuity requirements for police officer trainees. There is no evidence that either the Department of Personnel or the Civil Service Commission regarded Mr. Cecil as handicapped or that his visual impairment substantially affected any of his major life activities. Without this proof, Mr. Cecil's claim must fail.

### IV.

■ The trial court's decision rests on the premise that Tenn.Code Ann. § 8–50–103 requires an employer to justify its qualification standards any time an applicant with any type of impairment insists that he or she can do the work. This

interpretation of T.C.A. § 8–50–103 is too broad. The only persons entitled to take advantage of the statute are those who have a "physical, mental or visual handicap." When a plaintiff fails to prove that he or she has a handicap, the courts need not, and indeed should not, consider whether the plaintiff can actually do the work or consider whether the employer's standards are bona fide occupational requirements.[7] *Jasany v. United States Postal Serv.,* 755 F.2d at 1249–50.

We do not find that Mr. Cecil is incapable of serving as a police officer. We find only that he is not entitled to relief under Tenn. Code Ann. § 8–50–103(a) because he has failed to prove that he has a visual handicap. Accordingly, we reverse the trial court's decision and remand the case with directions that Mr. Cecil's complaint be dismissed with prejudice. We tax the costs of this appeal against the Metropolitan Government of Nashville and Davidson County.

TODD, P.J., and LEWIS, J., concur.

---

7. No one has questioned the Civil Service Commission's authority to promulgate the visual acuity standards. However, we note that the Metropolitan Police Department apparently does not share the Department of Personnel's and Civil Service Commission's view of the importance of these standards. This difference of opinion does not give rise to a cause of action under Tenn.Code Ann. § 8–50–103(a). At most, it addresses itself to the administrative discretion and management prerogatives of the city agencies involved or to the waiver procedures embodied in the Civil Service Commission's rules.