**Jeff HALLUMS, Plaintiff/Appellee,**

v.

**COCA–COLA BOTTLING CO. CONSOLI-DATED, Coca–Cola Bottling Company of Nashville, Inc., Gregory Coulson and Chuck Bracey, Defendants/Appellants.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Oct. 13, 1993.

Permission to Appeal Denied by
Supreme Court Feb. 28, 1994.

K. Stephen Powers, Philip B. Whitaker, Jr., Witt, Gaither, & Whitaker, P.C., Chattanooga, for defendants-appellants.

William E. Farmer, Lebanon, for plaintiff-appellee.

### OPINION

CANTRELL, Judge.

We granted permission to appeal under Tenn.R.App.Proc. 9 solely on the question of whether plaintiff's discharge violated Tenn. Code Ann. § 8–50–103 which proscribes discrimination against handicapped persons. We find that under the circumstances of this case, the plaintiff's visual impairment is not a handicap that triggers the protection of the anti-discrimination law.

### I.

Plaintiff Jeff Hallums was born without sight in his right eye. The eye was removed shortly afterwards, and he wears a prosthesis in his right eye socket. Mr. Hallums first began working for defendant/appellant Coca–Cola Bottling Company of Nashville, Inc., in

1980 as a truck washer. At the time of the events that led to this lawsuit, Mr. Hallums held the position of route manager, which involved supervisory authority over an assistant and four or five route salesmen. His duties included training his subordinates, calling on trade accounts, and keeping customers supplied with the company's product. Sometimes he or his assistant would drive a route truck to fill in for a route salesman who was ill or on vacation.

Defendant Gregory Coulson is the Human Resources Manager of defendant Coca–Cola Bottling Company Consolidated, the parent company of Mr. Hallums' employer. In the summer of 1989, Mr. Coulson asked all branch managers in Tennessee to make sure that all relevant personnel possessed Department of Transportation medical certifications required of drivers of trucks heavier than 26,000 pounds gross weight. Mr. Hallums did not have that certification, and was unable to obtain it because of his monocular vision. After he discovered that Mr. Hallums did not have a medical certificate, Mr. Coulson instructed defendant Chuck Bracey, Mr. Hallums' immediate supervisor, not to allow Mr. Hallums to drive a route truck. Mr. Hallums continued to work as a route manager for the defendants for the next six months, but he did not drive a route truck. His employment with Coca–Cola was terminated on December 31, 1989, apparently because his failure to obtain medical certification made it impossible for him to perform one of the duties associated with his position.

## II.

Mr. Hallums sued for wrongful discharge, alleging promissory fraud, misrepresentation, wrongful interference with prospective business relations and violation of the employment discrimination law, Tenn.Code Ann. § 8–50–103. The lower court denied the defendants' motion for summary judgment. The sole issue we are determining today is whether the employment discrimination statute the plaintiff is relying upon applies in this case. Tenn.Code Ann. § 8–50–103(a) reads in pertinent part:

"There shall be no discrimination in the hiring, firing or other terms and conditions of employment ... of any private employer, against any applicant for employment based solely upon any physical, mental or visual handicap of the applicant, unless such handicap prevents the applicant from performing the duties required by the employment sought or impairs the performance of the work involved."

The defendant argues that even if Mr. Hallums' condition satisfies the requirements of Tenn.Code Ann. § 8–50–103, his termination is justified under the act because he could not legally perform one of the duties of his job. But as we have concluded that Mr. Hallums' condition does not qualify as a handicap, there is no need for us to determine whether his monocular vision prevented him from performing the duties of his position, and so we pretermit that question.

## III.

In *Cecil v. Gibson,* 820 S.W.2d 361 (Tenn. App.1991), this court has previously had to deal with the question of what constitutes a handicap for purposes of the employment discrimination law. The plaintiff in that case also suffered from defective vision in one eye, and his application to become a police officer trainee was denied because he did not meet the applicable medical standards for visual acuity. The court noted that no definition of "handicap" is found in Tenn.Code Ann. § 8–50–103, but it found an applicable definition in the Human Rights chapter of the Tennessee Code (Tenn.Code Ann. § 4–21–102(9)(A)):

"Handicap" means, with respect to a person:

(i) A physical or mental impairment which substantially limits one (1) or more of such person's major life activities;

(ii) A record of having such an impairment; or

(iii) Being regarded as having such an impairment.

The definition in T.C.A. § 4–21–102(9)(A) is taken almost verbatim from the Federal Rehabilitation Act, which the court had previously held is complementary to Tenn.Code Ann. § 8–50–103. *Leabow v. Swift–Eckrich,*

*Inc.*, 1991 WL 83336 (Tenn.Ct.App. May 22, 1991).

The court was compelled to search further to determine the proper scope for the key phrase in that definition, "major life activities." The Equal Employment Opportunity Commission defines that term in its regulations pertaining to equal opportunity in federal employment as "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." (*Cecil v. Gibson* at 364). Applying the above definitions, the court determined that Mr. Cecil's visual impairment was not a handicap for purposes of the handicap discrimination law.

### IV.

The current case resembles the *Cecil* case in many respects, but the inquiry into whether the impact of Mr. Hallums' visual impairment upon his major life activities is sufficient to bring him within the protection of Tenn.Code Ann. § 8–50–103 must necessarily be an individual one. "Determinations concerning who is handicapped or whether an impairment substantially limits a major life activity should be made on a case-by-case basis." *Cecil* at 365. The evidence in the record is limited as to the effect of Mr. Hallums' impairment on life activities outside of the job in dispute. Mr. Hallums relies upon the deposition of Dr. Darrell Schenk, an ophthalmologist who examined him, and who testified to the limitations that Mr. Hallums would inevitably experience as a result of his condition. Although he has been able to compensate in many respects for the lack of vision in one eye, Mr. Hallums is unable to perform occupational functions that require close-up depth perception (surgeon, jeweler). Also, it would not be advisable for him to participate in occupational or athletic activity where the remaining eye might be subjected to injury (carpentry, welding, baseball, tennis).

It is clear that Mr. Hallums' impairment does limit several major life activities to some extent. This court is of the opinion, however, that the limitations should not be considered "substantial" for the purposes of the handicap discrimination law. Several oc-cupational and recreational activities are closed to Mr. Hallums as a result of his impairment, but many others remain open. While we find it regrettable that Mr. Hallums' visual impairment has caused him to lose a job that he has worked very hard to earn and to retain, we must interpret the statute consistently with our understanding of the meaning that the legislature intended to give it. In *Cecil,* this court has held, "[w]hile 'working' is a major life activity, working at the specific job of one's choice is not." We are not inclined to reverse that holding.

We have therefore found that Mr. Hallums' claim is not an appropriate one for the application of Tenn.Code Ann. § 8–50–103, but we express no opinion as to the merits of his claims under any other theories. The lower court's order denying the defendants' motion for summary judgment on the claim based on Tenn.Code Ann. § 8–50–103 is reversed, and that claim is dismissed. The cause is remanded to the chancery court for further proceedings. Tax the costs on appeal to the appellee.

TODD, P.J., and KOCH, J., concur.