54 F.3d 776
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Robert J. GREER, Plaintiff-Appellant,
v.
SEARS, ROEBUCK & CO., Defendant-Appellee.
 No. 94-5502.
 United States Court of Appeals, Sixth Circuit.
 May 10, 1995.
 
 Before: KENNEDY and MILBURN, Circuit Judges, and WISEMAN, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff, Robert James Greer, appeals the District Court's grant of summary judgment in this employment discrimination action against defendant, Sears, Roebuck & Company. First, plaintiff argues that Sears discriminated against him on the basis of race and handicap by requiring him to work outdoors, despite a medical condition that caused plaintiff to be unusually sensitive to the heat. Second, plaintiff argues that Sears fired plaintiff in retaliation for filing complaints with the Equal Employment Opportunity Commission ("EEOC") and the Tennessee Human Resources Commission ("THRC"). Plaintiff contends that Sears violated Title VII of the 1964 Civil Rights Act, 42 U.S.C. Sec. 2000e-3; Tennessee's handicap discrimination statute, T.C.A. Sec. 8-50-103; and Tennessee's anti-retaliation statute, T.C.A. 4-21-301. Finally, plaintiff contends that the District Court improperly excluded certain evidence, and improperly denied plaintiff's demand for a jury trial, compensatory damages, and punitive damages under Title VII. For the following reasons, we affirm in part and reverse in part.
 
 I. Facts
 
 2
 Plaintiff, a black male, was employed by Sears from November 26, 1980 until July 31, 1991. Prior to June 19, 1991, plaintiff was a Lawn & Garden Service Technician, working indoors in the Memphis Product Service Center. Plaintiff diagnosed and repaired large lawn equipment such as lawn mowers, riding mowers and riding tractors. On June 19, 1991, plaintiff was reassigned to make service calls to customers' homes in a van provided by Sears. At this time, plaintiff informed his supervisors that he could not be outside in the sun for long periods of time and that he could not read a map. Plaintiff's supervisor requested that plaintiff provide a doctor's certificate. On June 27, 1991, plaintiff filed a complaint of racial discrimination with the EEOC and the THRC based on his reassignment.
 
 
 3
 On June 27, 1991 and July 2, 1991, plaintiff saw two different physicians who each provided plaintiff with a medical certificate that he had sought treatment, but did not state that plaintiff could not work outdoors. On July 3, 1991, plaintiff saw Dr. J. Kenneth Wong, who diagnosed plaintiff as suffering from heat exhaustion. Dr. Wong provided plaintiff with a statement that plaintiff should not work outdoors for the remainder of the summer.
 
 
 4
 On July 8, 1991, plaintiff was called to a meeting with Sears management employees, Ronald L. Medford, Doyle Tyler and David Meeks. Plaintiff brought a tape recorder to the meeting. Plaintiff had never attempted to record a meeting prior to this date. Medford told plaintiff that unless he shut off the tape recorder, the meeting would not be held. When plaintiff declined to shut off the tape recorder, the meeting was cancelled. Plaintiff testified that he was not told at this time that company policy prohibited employees from tape recording meetings.
 
 
 5
 On July 10, 1991, plaintiff was called into another meeting with Medford, Tyler and Meeks. Medford stated the he was told by "his folks" that employees could not tape meetings. Plaintiff then asked if he could have someone sit in on the meeting if he did not tape it. Medford selected Kendra Coleman to sit in on the meeting and take notes. When plaintiff requested a copy of the notes, his request was refused. At this meeting, plaintiff was informed that his doctor's statement was inconclusive and that he needed to provide a statement with a detailed description of his medical condition. Until such time, plaintiff would continue to be assigned to outside work. At this meeting, plaintiff informed his supervisors that he was taking medication and should not be driving.
 
 
 6
 On July 11, 1991, plaintiff was again ill. He went to see Dr. Wong, who provided a statement that plaintiff should not be driving because of the medication he was taking for vertigo. On July 12, 1991, plaintiff returned to work with the statement from Dr. Wong. Plaintiff testified that he gave the statement to a Sears employee, Mary Woods. Later that day, plaintiff was in a one car accident after passing out and was taken to the hospital. He was hospitalized until July 16, 1991, and did not return to work until July 31, 1991.
 
 
 7
 On July 31, 1991, plaintiff was called into a meeting with Medford, Tyler, Meeks, and Rickie Johnson, a black management employee. Plaintiff was informed that the meeting was being held because plaintiff had failed to adequately fill out the accident report. Plaintiff again brought a tape recorder to the meeting. Medford mentioned that Sears had a company policy prohibiting the recording of meetings. Medford further stated that unless plaintiff turned off the recorder, he would be subject to termination. Plaintiff testified that this was the first time the company policy was stated to him. Plaintiff then asked to see the company policy, at which point Medford moved on to another topic and left the room with Tyler, Meeks and Johnson. Plaintiff testified that he subsequently forgot about the tape recorder. When Medford returned to the room, he asked if the tape recorder was still on. When Medford discovered that it was, Medford told plaintiff that he was terminated for insubordination.
 
 II. Standard of Review
 
 8
 We review a grant of summary judgment de novo. See Kraus v. Sobel Corrugated Containers, Inc., 915 F.2d 227, 229 (6th Cir. 1990). Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Proc. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial."' Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).
 
 
 9
 III. The Title VII Retaliatory Discharge Claim
 
 
 10
 Plaintiff contends that he was terminated in retaliation for filing a complaint with the EEOC. Defendant contends that plaintiff was terminated for insubordination. Specifically, plaintiff continued to tape record a meeting after having been requested to turn the tape recorder off.
 
 
 11
 Title VII of the Civil Rights Act of 1964 makes it unlawful to discriminate against an employee because "he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. Sec. 2000(e)-3(a). Proof of a retaliation claim is governed by McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981). In order to state a claim for retaliatory discharge, plaintiff must show that (1) he engaged in an activity protected by Title VII; (2) the exercise of plaintiff's civil rights was known to defendant; (3) defendant subsequently took an employment action adverse to plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. See Canitia v. Yellow Freight System, Inc., 903 F.2d 1064, 1066 (6th Cir.), cert. denied, 498 U.S. 984 (1990). The District Court found that plaintiff satisfied the first three elements, but failed to show a causal connection between the EEOC complaint and the termination. The District Court also held that even if plaintiff had established a prima facie case, defendant would be entitled to summary judgment because plaintiff failed to demonstrate that defendant's reason for the discharge was pretextual.
 
 
 12
 Plaintiff correctly states that the fact that he was fired barely one month after filing an EEOC complaint is sufficient to create an inference of retaliation. In Wrenn v. Gould, 808 F.2d 493, 501 (6th Cir. 1987), this Court wrote that "'causal connection' may be demonstrated by the proximity of the adverse action to the protected activity." The District Court erred, therefore, in holding that plaintiff failed to establish a prima facie case. Nevertheless, as the District Court pointed out, defendant is still entitled to summary judgment because plaintiff has offered no evidence that defendant's reason for the termination was pretextual. After a plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a non-discriminatory reason for the adverse employment action. Id. In the present case, defendant met this burden of production by stating that plaintiff was terminated for insubordination. To avoid summary judgment, plaintiff, who carries the ultimate burden of persuasion, must offer some evidence that defendant's explanation is pretextual. See Canitia, 903 F.2d at 1067-68.
 
 
 13
 Viewing the evidence in the light most favorable to plaintiff, plaintiff has failed to offer any evidence that he was not terminated for tape recording a meeting after having been requested to turn the recorder off. Plaintiff's evidence of pretext is as follows: plaintiff testified that he was not informed of the company policy, or that he could be terminated for violating the policy, prior to the day he was terminated. Plaintiff also testified that he forgot to turn the tape recorder off; he did not intentionally defy his supervisor. Additionally, the testimony of Medford suggests that Medford either was not entirely forthcoming with plaintiff about the policy or did not fully understand the policy himself. Medford told plaintiff that Sears prohibited the recording of meetings, when the policy only prohibited the recording of meetings without the consent of all parties. At best, however, the foregoing evidence suggests that plaintiff did not intentionally defy his supervisor and that the policy was not clearly explained; it does not suggest that defendant's reason for terminating plaintiff was pretextual.
 
 
 14
 Plaintiff also offered evidence that he was never subject to disciplinary actions or closed door meetings with management before July 1991. That plaintiff had a good work record prior to his termination, however, does not demonstrate that Sears took harsher action against plaintiff because of the EEOC complaint. Plaintiff has not presented any evidence, for example, that others were not terminated for violations of the tape recording policy or comparable instances of insubordination. Accordingly, summary judgment is appropriate.
 
 IV. The Transcripts
 
 15
 Plaintiff argues that the District Court improperly excluded transcripts of the Appeals Tribunal Hearing and the Board of Review Hearing from consideration. The District Court held that the transcripts could not be considered under Rule 56 because they were not properly authenticated and, therefore, were not admissible at trial. The District Court stated that it was not clear whether the persons who transcribed the tapes of the hearings were qualified or accredited.
 
 
 16
 Plaintiff correctly argues that evidence in opposition to summary judgment need not be in a form admissible at trial. See Ashbrook v. Block, 917 F.2d 918 (6th Cir. 1990). Plaintiff further argues that the transcripts for the Appeals Tribunal were prepared pursuant to T.C.A. Sec. 50-7-304, in preparation for appeal, and that both transcripts were properly authenticated by the persons transcribing them. We agree. The persons who transcribed the tapes certified that they were true and accurate transcripts of the testimony.
 
 
 17
 The District Court's error, however, was harmless. Plaintiff has not pointed to anything in the transcripts that would create an issue of material fact for trial. Plaintiff contends that the transcripts are important because they cast doubt on Medford's credibility. At most, however, the transcripts suggest minor inconsistencies between Medford's recollection of the July 31st meeting and Tyler and Johnson's recollections. Nothing in the testimony of Tyler and Johnson, however, suggests that plaintiff was not terminated for insubordination.
 
 
 18
 V. The Tennessee Retaliatory Discharge Claim
 
 
 19
 Plaintiff argues that the District Court improperly granted summary judgment on plaintiff's state law claim of retaliatory discharge because defendant did not mention the claim specifically in its motion for summary judgment. Plaintiff's argument is without merit. Defendant requested summary disposition on "all remaining allegations contained in Plaintiff's complaint. Specifically, those claims are of race discrimination in violation of 42 U.S.C. Sec. 2000(e), retaliatory discharge and handicap discrimination in violation of Tenn. Code Ann. Sec. 8-50-103, et seq." Although defendant did not specifically address the state claim in its supporting memorandum, defendant did address the federal retaliation claim, which is based upon the same facts and has a similar standard of proof. Plaintiff, therefore, was clearly on notice that defendant was requesting summary judgment on the state retaliation claim.
 
 VI. The Title VII Disparate Treatment Claim
 
 20
 Plaintiff argues that the summary judgment motion on the race discrimination claim was not properly before the District Court. Plaintiff's argument arises from defendant's misunderstanding of plaintiff's claim. Defendant, in its motion for summary judgment, argued that plaintiff had not been terminated because of race discrimination. Plaintiff, however, never alleged that he was terminated because of race. Rather, plaintiff alleged that he was reassigned to outdoor work because of race. Defendant, therefore, did not seek summary judgment on plaintiff's actual race discrimination claim, and defendant's memoranda did not address race discrimination based upon reassignment. Even though plaintiff pointed out defendant's error in his memorandum in opposition to defendant's motion, defendant never clarified or corrected its motion.
 
 
 21
 "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Defendant failed to meet this burden. Nor could the District Court grant summary judgment sua sponte without giving plaintiff notice and an opportunity to respond. See Kistner v. Califano, 579 F.2d 1004, 1006 (6th Cir. 1978). Accordingly, we reverse the District Court's grant of summary judgment on plaintiff's claim that he was transferred to outside work on account of his race.
 
 
 22
 VII. The Tennessee Handicap Discrimination Claim
 
 
 23
 The District Court did not address the handicap discrimination claim on the merits, but dismissed the claim after concluding that plaintiff would be unable to prove damages. The District Court reasoned that plaintiff would not even be entitled to equitable relief because he was subsequently discharged for a non-discriminatory reason. Plaintiff argues that he did suffer damages. Specifically, plaintiff contends that he became ill and was in a work-related car accident as a result of having to work in the sun and, consequently, lost wages. Plaintiff argues that he is entitled to the difference between his wage and his workers' compensation benefits, as well as punitive damages.[1] We do not need to address whether plaintiff properly states a claim for damages because plaintiff has failed to offer any evidence that his impairment would qualify as a handicap under Tennessee law. We, therefore, affirm the District Court's grant of summary judgment on alternative grounds.
 
 
 24
 Tennessee's handicap discrimination statute provides that:
 
 
 25
 There shall be no discrimination in the hiring, firing or other terms and conditions of employment ... of any private employer, against any applicant for employment based solely upon any physical, mental or visual handicap of the applicant, unless such handicap to some degree prevents the applicant from performing the duties required by the employment sought or impairs the performance of the work involved.
 
 
 26
 Tenn. Code Ann. Sec. 8-50-103(a). To establish a claim, plaintiff first must show that he has a physical or mental impairment that substantially limits a major life activity. See Cecil v. Gibson, 820 S.W.2d 361, 365 (Tenn. Ct. App. 1991). See also Jasany v. United Postal Service, 755 F.2d 1244, 1249 (6th Cir. 1985). "An impairment must limit a person's general employability in order to substantially limit a major life activity. While 'working' is a major life activity, working at the specific job of one's choice is not." Cecil, 820 S.W.2d at 365 (citations omitted). In Cecil, the court held that the plaintiff, who had 20/400 vision in one eye and could only "count fingers at four feet" in that eye, did not have a handicap. Id. at 362. See also Hallums v. Coca-Cola Bottling Co., 874 S.W.2d 30 (Tenn. Ct. App. 1993) (holding that plaintiff, who lacked vision in one eye and could not perform work that required close-up depth perception, did not have a handicap). The Cecil court noted that the plaintiff had held a variety of jobs in law enforcement and was an accomplished athlete. See 820 S.W.2d at 365.
 
 
 27
 In the present case, plaintiff alleges that he suffers from heat induced vaso vagal syncope and cannot read maps. The only employment limitations that plaintiff claims is that he cannot "seek employment where the essential functions of the employment position include working for extended periods of time outside in the sun and heat and/or reading maps." Plaintiff has not presented any evidence, however, that these impairments limit his general employability or substantially limit a major life activity.[2] Indeed, prior to his reassignment, plaintiff had worked at defendant's service center for eleven years in various positions. Subsequent to his termination, plaintiff worked for Federal Express. Like the plaintiff in Cecil, plaintiff has held a variety of jobs successfully. See 820 S.W.2d at 365. "An impairment that affects only a narrow range of jobs can be regarded either as not reaching a major life activity or as not substantially limiting one." Jasany, 755 F.2d at 1249, n.3. Because plaintiff has failed to present evidence that he has a handicap, we "need not, and indeed should not, consider whether the plaintiff can actually do the work or consider whether the employer's standards are bona fide occupational requirements." Cecil, 820 S.W.2d at 366. Accordingly, summary judgment was appropriate.
 
 
 28
 VIII. The Availability of Jury Trials, Punitive Damages
 
 
 29
 and Compensatory Damages Under Title VII
 
 
 30
 Plaintiff argues that the District Court improperly dismissed his claim for compensatory and punitive damages under Title VII, and improperly struck his demand for a jury trial under Title VII. Plaintiff's arguments are without merit. Prior to the enactment of the Civil Rights Act of 1991, compensatory damages, punitive damages and jury trials were not available under Title VII. See Landgraf v. USI Film Products, 114 S. Ct. 1483, 1488-91 (1994).[3] Furthermore, the Act is not retroactive. Id. The Act did not become effective until November 21, 1991, after plaintiff's cause of action arose.
 
 IX. Conclusion
 
 31
 For the foregoing reasons, we reverse the District Court's grant of summary judgment on plaintiff's racial discrimination claim, and remand for further proceedings consistent with this opinion. We affirm the District Court's judgment in all other respects.
 
 
 
 *
 The Honorable Thomas A. Wiseman, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation
 
 
 [1]
 The District Court held that punitive damages are available, and defendant has not cross-appealed on this issue
 
 
 [2]
 Major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working. See Jasany v. United Postal Service, 755 F.2d 1244, 1248 (6th Cir. 1985)
 
 
 [3]
 Although the Supreme Court has not expressly held that jury trials are not available under Title VII, the Court has assumed that jury trials are not available. See Landgraf v. USI Film Products, 114 S. Ct. 1483, 1490, n. 4 (1994). See also Lehman v. Nakshian, 453 U.S. 156, 166-67 (1981)